EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FREDDIE RUIZ RAMOS, acusado y apelante.

*Número:* CR-70-81    *Resuelto:* 1ro. de abril de 1971

---

*Enrique Miranda Merced,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE INTERINO SEÑOR PÉREZ PIMENTEL emitió la opinión.

El apelante fue acusado, convicto y sentenciado por la comisión de un delito de hurto mayor consistente en que el día 7 de febrero de 1969 sustrajo del piso número 11 del edificio de Fomento Industrial, sito en Hato Rey, una máquina pulidora y lavadora de piso propiedad de la Administración de Fomento Económico de Puerto Rico, valorada en más de $100.00, de la cual se apropió para su propio lucro y beneficio.

En este recurso señala la comisión del siguiente

"Unico Error

Erró el Honorable Tribunal al declarar culpable y sentenciar al acusado, a pesar de que el Ministerio Público no demostró que la identificación de que fuera objeto el acusado *durante el juicio* (por parte del único testigo que tendía a conectarlo con los hechos imputados) no estuviese manchada por la identificación ilegal de que había sido objeto el acusado *con anterioridad al juicio, United States* v. *Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926; y a pesar de que la identificación de que fuera objeto el acusado en persona, *con anterioridad al juicio,* resultaba tan innecesariamente sugestiva y conducente a una irreparable identificación errónea que constituía una negación del debido proceso de ley, *Stovall* v. *Denno,* 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967; y a pesar también, de que la identificación de que fuese objeto el acusado, mediante una fotografía, *con anterioridad al juicio,* resultaba tan impermisiblemente sugestiva que hacía altamente probable el que se hiciese una irreparable identificación errónea. *Simmons* v. *U.S.,* 390 U.S. 377, 2 CrL 3153." (Página 4 Alegato del acusado-apelante)

Víctor Manuel Pérez fue el único testigo de cargo que identificó al acusado-apelante como el autor del delito. Declaró ser empleado de la Provision Service y vio al acusado el 7 de febrero de 1969. "Yo estaba prestando servicio—dice—en el

piso 11 de Fomento y al abrir una de las puertas que da acceso a la escalera de salida abrí la puerta y me encontré con el Sr. Freddie Ruiz Ramos que traía una máquina de pulir piso. Él me dijo estas palabras, en una forma un poco engañadora, 'que hacía rato que estaba esperando por el ascensor que no venía y decidió bajar por la escalera. Yo decidí abrirle la puerta y él entró hacia dentro' ". Le describió como vistiendo un pantalón mahón y camisa, estaba salpicado de pintura y tenía un casco protector de los que usan los obreros. Declaró además que había visto al acusado con una pulidora al abrir la puerta en el último escalón de la escalera que estaba al lado de la puerta; que el apelante le pidió que le aguantara la puerta en lo que él pasaba; que él se la aguantó y el apelante entró en el ascensor.

El acusado presentó como defensa una coartada.

Del récord surge que el testigo Víctor Manuel Pérez no conocía al acusado con anterioridad al día de los hechos. La primera vez que ve al acusado es cuando abre la puerta y él está en el último escalón al lado de la puerta. En ese momento el testigo observó al acusado por menos de medio minuto desde que le vio hasta que después de abrirle la puerta el acusado penetró en el ascensor. El testigo no encontró que hubiera algo raro en la situación; que allí estaba sucediendo una cosa normal y corriente. ¿Cómo es que el testigo Pérez identifica posteriormente a la persona que vio el día 7 de febrero con la máquina pulidora de pisos?

El procedimiento seguido por la policía para la identificación del acusado, se explica en el interrogatorio del propio Sr. Pérez. Veamos la transcripción pertinente del incidente:

"P. ¿Y la única intervención suya con el acusado es que él manifiesta 'mire aguánteme la puerta en lo que paso', y usted la aguantó?

R. Sí.

P. ¿Ahí él se mete en el ascensor y no sabe nada más?

R. Nada más.

P. ¿Qué lapso de tiempo duró esa intervención?

R. Menos de medio minuto.

P. ¿Menos de 30 segundos?

R. No, menos de medio minuto.

P. Le pregunto, ¿cuándo volvió a ver al acusado?

R. Si mal no recuerdo el 5 de marzo.

P. ¿La fecha de los hechos cuándo fue?

R. 7 de febrero.

P. Es decir que ha pasado más de un mes desde la fecha que usted supuestamente le abre la puerta a la fecha que usted vuelve a ver al acusado. ¿Dónde volvió a ver al acusado?

R. Primero lo ví por un retrato que me enseñaron la Detective y después personalmente.

P. ¿Un retrato?

R. Sí, señor.

P. ¿Más de uno?

R. Un retrato. Ví más de ellos pero solamente ví uno donde lo pude identificar.

HON. JUEZ: —

P. Perdone. Repítame eso.

R. O sea, yo fui al cuartel de la Calle Bolivia y me enseñaron como 200 retratos y no lo pude encontrar allí. No fue hasta el otro día que vino el Detective y me enseñaron un retrato y como tenían una sospecha de él y puede ver el retrato y dije 'ese es el individuo que yo ví'.

P. ¿Usted va al cuartel de la Policía qué día?

R. Eso fue sábado. El día viernes fueron los hechos y voy al fichero y como en 200 retratos y ahí no lo encontré.

P. ¿Por lo menos en esos usted no lo encontró?

R. No, señor.

P. ¿Y entonces cuándo es que va la Detective a su casa?

R. No fueron a casa, a mi sitio de trabajo.

P. ¿Cuándo?

R. Creo que el 5 de marzo si mal no recuerdo.

P. Más o menos el mismo día que usted ve a este señor en la Princesa?

R. Exactamente.

P. ¿Y cuántas fotografías le enseñaron en el trabajo la Detective cuando fueron donde usted?

R. Solamente una.

P. ¿Y esa fotografía de quién era?

R. Del Sr. Ramos.

P. ¿Cómo estaba vestido el Sr. Ramos en esa fotografía?

R. En esa fotografía tenía un 'sweater' blanco y el pantalón no lo recuerdo.

P. ¿Estaba de cuerpo entero?

R. De cuerpo entero.

P. ¿Se le veía bien la cara?

R. Sí, señor.

P. ¿Qué pasó en La Princesa? ¿Usted dice que le llevaron a la Princesa a verlo personalmente a él?

R. Sí, señor.

P. ¿Y eso fue después que le habían enseñado los retratos?

R. Eso fue el mismo día.

P. Pero le pregunto si fue después que le enseñaron el retrato?

R. Sí.

P. ¿Y en La Princesa qué pasó?

R. El Detective fue a La Princesa, lo sacó y me dijo que estuviera pendiente y estuviera seguro si era el mismo individuo que yo había visto y al verlo él se montó en el carro y le dije 'sí, ese es'. Lo llevaron al cuartel de la Calle Bolivia y allí lo interrogaron otra vez.

P. ¿Además del acusado cuántos otros presos de La Princesa le llevaron a usted acá?

R. Nadie más.

P. ¿Solamente al acusado?

R. Sí, señor. (T.E. págs. 13 a 17.)

.        .        .        .        .        .        .        .

HON. JUEZ:—

P. Señor, yo le pregunto en el día de hoy a usted si usted le ha dicho al Sr. Fiscal y al compañero que usted dice que el señor que usted vió fue a este señor?

R. Sí, señor y estaba más delgado.

P. ¿Estaba más delgado?

R. Sí, señor.

P. Le pregunto si de eso usted está seguro hoy o no?

R. Si, señor estoy completamente seguro.

P. Le pregunto señor, si la seguridad que usted tiene en el

día de hoy de decir que en el día de los hechos al que vió con esa pulidora era al Sr. Ramos . . .

R. Sí.

P. . . . Eso se debe, perdone no he acabado, esa seguridad que tiene usted, esa identificación que hace en el día de hoy del Sr. Ramos se debe al retrato que usted vió?

R. Al retrato y la persona; que lo ví, Vuestro Honor.

P. ¿Entonces la seguridad que usted da es a base del retrato o a base de que usted se recuerda? (T.E. págs. 18, 19.)

HON. JUEZ:—

.    .    .    .    .    .    .    .

P. Señor, usted se refirió cuando contestó que era a base del retrato y que lo vió a él; ¿se refirió a que lo vió el día de los hechos o el día que lo vió en la Princesa?

R. Al día de los hechos.

P. ¿Al día de los hechos?

R. Sí, señor.

P. Entonces la contestación debo entender que se refirió al día de los hechos y al retrato?

R. Exactamente.

HON. FISCAL:—

¿Me permite una pregunta?

LCDO. BATISTA:—

¿Me permite una pregunta?

HON. JUEZ:—

Después.

HON. FISCAL:—

P. ¿Usted está seguro que es la misma persona que usted vió el día 7 de febrero bajando con esa máquina?

R. Sí, señor.

P. Fue lo que usted dijo. ¿Fue la misma persona que usted vió en el retrato y es la misma persona que usted vió en la cárcel?

R. Exactamente.

P. ¿Y es la misma persona que está aquí?

R. Sí, señor.

Nada más.

HON. JUEZ:—

Compañero de la defensa.

LCDO. BATISTA:—

P. Cuando el compañero dice la cárcel usted quiere decir que fueron a la cárcel?

R. Exactamente.

Es para aclarar el record.

HON. JUEZ:—

Adelante.

LCDO. BATISTA:—

P. ¿Cuánto tiempo estuvo este señor acusado el día que usted fue a La Princesa, cuánto tiempo estuvo con usted allí hablando?

R. Bueno, él y yo no hablamos. Yo me senté en la parte, al frente del carro y él en la parte atrás con los demás detectives.

P. ¿Cuánto tiempo?

R. ¿En el carro?

P. Sí. ¿El tiempo que fueron al cuartel?

R. Diría aproximadamente como una hora.

No hay más preguntas." (T.E. págs. 21 a 23.)

■ La identificación del acusado durante el juicio por el testigo de cargo es la menos confiable y más sugestiva de todas las identificaciones, especialmente en un caso como el de autos en que esa identificación está precedida por identificaciones extrajudiciales, también manchadas de sugestividad y de poca o ninguna confiabilidad.

■ El testigo Sr. Pérez Lebrón, único que identifica al acusado, según ya hemos señalado, no conocía a éste, no le había visto antes de ocurrir los hechos y ese día le vio por un breve instante, menos de 30 segundos, en situación considerada por el testigo como normal. No había razón para que en ese corto período de tiempo el testigo concentrara su atención en los rasgos físicos del acusado. La identificación del acusado a base del recuerdo de ese breve instante no es confiable. Al día siguiente de los hechos se le mostraron al testigo en el Cuartel de la Policía unas doscientas (200) fotografías, pero en ninguna de ellas pudo identificar al acusado.

Un mes después la policía fue al sitio donde trabajaba el testigo y le mostró una sola fotografía del acusado para que identificara a éste de quien ya la policía tenía sospechas. Ese mismo día la detective condujo al testigo a la cárcel La Princesa y allí le pidieron estuviera pendiente para que dijera si la persona que ellos iban a sacar de La Princesa era el acusado. El único preso que la detective enseñó al testigo fue el acusado a quien ya el testigo había identificado momentos antes en la única fotografía que le mostró como la de un sospechoso.

Todas las circunstancias que han mediado en este caso señalan una identificación poco confiable e insuficiente para establecer la culpabilidad del acusado apelante más allá de duda razonable. Véase, *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969). La identificación hecha en este caso fue tan sugestiva que no nos equivocaríamos al afirmar que fue la policía quien identificó al acusado como el autor del delito y no el testigo Pérez Lebrón. Admitir la legalidad de esa identificación puede conducir a un extravío de la justicia. Véanse, *United States* v. *Wade*, 328 U.S. 218, 18 L.Ed.2d 1149; *Stoval* v. *Denno*, 388 U.S. 293, 18 L.Ed.2d 1199; *Simmons* v. *United States*, 390 U.S. 377; 19 L.Ed.2d 1247.

*Por los fundamentos expuestos, se revocará la sentencia apelada y se absolverá al acusado-apelante.*

El Juez Asociado Señor Rigau, no intervino.