EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTIAGO FIGUEROA TORRES, acusado y apelante.

*Número*: CR-73-16      *Resuelto*: 12 de marzo de 1974

*Nora L. Rodríguez,* abogada del acusado; *J. F. Rodríguez Rivera, Procurador General Interino,* abogado de El Pueblo.

El Juez Asociado Señor Martín emitió la opinión del Tribunal.

El apelante fue acusado de asesinato en segundo grado y de violación al Art. 4 de la Ley de Armas (33 L.P.R.A. sec. 633 y 25 L.P.R.A. sec 414), y hallado culpable por tribunal de derecho de homicidio voluntario (33 L.P.R.A. sec. 635) y del otro delito imputado, y fue sentenciado a cumplir de 4 a 7 años de presidio por el uno y seis meses de cárcel por el otro en forma concurrente.

Como único error plantea en apelación que "la manera en que se llevó a efecto la identificación del acusado en este caso es poco confiable y violenta el debido proceso de ley."

Los hechos pertinentes a la cuestión suscitada por este recurso son los siguientes: A las nueve de la noche del 4 de julio de 1970, el Parque Muñoz Rivera de San Juan fue escenario de unas peleas callejeras, como resultado de rencillas entre "pandillas" de jóvenes. Como a eso de las once a once y media de la noche, los encuentros de violencia culminaron en la muerte de un joven de veinte (20) años de edad de nombre Roberto Robles Betancourt. El acto criminal que produjo dicha muerte ocurrió cuando Roberto, la víctima, se disponía a pelear con otro joven conocido como "Potoco". Mientras Potoco se despojaba de su camisa para enfrentarse a Roberto, el apelante "se metió y le dio un puño" a Roberto, cayendo éste al piso. (T.E. Parte I, págs. 18–19). Salió entonces un tal

Andrés en defensa de Roberto y pidió que no golpearan a éste; por lo que el apelante contestó "tirándole" un "puyazo" a Andrés, sin lograr herirlo (T.E. págs. 55 y 61), y, al percatarse de que Roberto, la víctima, estaba levantándose, arremetió contra él, infiriéndole una herida de puñal que poco después le causó la muerte. El apelante abandonó corriendo el lugar de los hechos. Los hechos relatados ocurren cerca del edificio del Museo en el Parque Muñoz Rivera, ante la concurrencia de 20 a 25 personas aglomeradas en el lugar.

El juicio contra el apelante se celebró el 19 de enero de 1971. El testigo Pedro Martínez Rodríguez, quien tenía 14 años de edad a la fecha del juicio, identificó en corte al apelante como el matador del joven Roberto Robles. Admitió que no había visto al apelante antes de la fecha de los hechos delictivos, ni siquiera durante las horas de la noche que precedieron al instante de la agresión (T.E. Parte I, págs. 20 (sic 21), 31–32); que estaba oscuro pero que había alguna luz que provenía de unas bombillas de las "que ponen en las Fiestas Patronales" situadas como a 100 pies del lugar de los hechos (T.E. Parte I, págs. 16–18); que vio al apelante venir de frente (T.E. Parte I, pág. 28), estando el testigo como a tres pies de distancia de la víctima y del homicida (T.E. Parte I, pág. 50); que pudo observar al apelante por espacio de tres a cinco minutos (T.E. Parte I, págs. 24 y 53), aunque a preguntas de la defensa declaró que lo vio por unos "cuantos segundos" (T.E. Parte I, págs. 28 y 61); que esa misma noche y poco tiempo después de los hechos, tuvo la oportunidad de volver a ver al apelante con "dos tipos más", logrando observarlo y reconocerlo con "el rabo del ojo" a una distancia aproximada de cuatro pies, mientras el apelante le pasaba por el lado y "por detrás", habiendo transcurrido en su observación unos dos minutos (T.E. Parte I, págs. 22–23, 48 y 58). Al otro día de los hechos el testigo recibió la visita de un detective de la Policía. El testigo no le hizo descripción física alguna del apelante al detective investigador. Luego fue trasladado

a la División de Detectives donde le mostraron varios retratos —diez o doce—reconociendo al apelante en uno de los retratos (T.E. Parte I, pág. 25). Declaró que el día de los hechos el apelante tenía un "poquito de bigote", un peinado estilo *African look*, "pero no grande", "una cosa poca" sobre el que tenía una boina blanca con muñequitos dibujados, y tenía "una chivita rala pequeña". En el retrato que el testigo identificó el apelante estaba recortado y afeitado, y se veía algo más joven que en el día de juicio (T.E. Parte I, págs. 32–33). El testigo admitió que la noche de los hechos y como consecuencia de ellos estaba en estado nervioso. (T.E. Parte I, pág. 60.)

La única identificación que el testigo hizo del apelante antes del juicio fue mediante el examen de fotografías en la División de Detectives. Luego en Fiscalía lo llevaron para que viera un tal Fred encontrando que no se parecía "al tipo que lo mató". (T.E. Parte, I, pág. 33.)

La defensa presentó como único testigo a Juan Fernández Cruz, conocido por "Potoco", quien corroboró el testimonio del testigo Pedro Martínez en cuanto a la forma en que ocurrieron los hechos, y declaró no haber visto allí a dicho testigo de cargo (T.E. Parte I, págs. 81–83), declarando además que no le fue posible reconocer al agresor en el momento de ocurrir los hechos. Añadió que no notó el acto del apuñalamiento, pues le pareció que el agresor había tirado un golpe. (T.E. Parte I, págs. 81 y 84.)

█ El quehacer judicial ha establecido que el procedimiento de identificación pre-juicio mediante fotografías ha de ser respetado y sostenido a menos que se trate de una situación tan impermisiblemente sugestiva que dé lugar a una irreparable identificación errónea. *Simmons* v. *United States*, 390 U.S. 377 (1968). Véase *Pueblo* v. *Ruiz Ramos*, 99 D.P.R. 812 (1971). Si de la totalidad de la circunstancias que rodearon tal identificación previa al juicio surge que se cumplió con el principio expresado, la tarea judicial validará la misma. Véase *Pueblo* v. *Morales Romero*, 100 D.P.R. 436, 442–443

(1972). En el caso de autos, el testigo observó al agresor de su amigo, (¹) "frente a frente", en el momento de presenciar los hechos delictivos, a tres pies de distancia. Al poco rato en la misma noche, volvió a ver al apelante cerca del lugar de los hechos. Al siguiente día, cuando presumiblemente tenía aún fresca en su mente la imagen del agresor, identificó la fotografía del apelante entre diez o doce que le mostraron en la División de Detectives de la Policía; en una ocasión hizo una identificación negativa de una persona que le presentaron. Aproximadamente seis meses después de los hechos, el día del juicio, identificó al apelante como el autor de los hechos.

■ Nada surge de la transcripción de los testimonios prestados ni de los planteamientos de la representación legal del apelante que revele o insinúe sugestividad en la identificación que hiciera el testigo mediante las fotografías. En ausencia de prueba que demuestre o permita razonablemente inferir una persuasión irresistible o circunstancias tales que conduzcan a la conclusión forzosa de una identificación equivocada, este Tribunal carece de justificación para declarar que la identificación previa al juicio mediante fotografías vulneró el debido proceso de ley.

■ Aunque en la fotografía señalada por el testigo como la del apelante éste aparecía rasurado y "recortado", a diferencia de la fecha de los hechos cuando tenía un poquito de bigote, barba rala y un peinado estilo "afro", tal discrepancia no impide ni afecta la admisibilidad de la indentificación personal en el juicio, sino que constituye un factor a considerarse por el juzgador de los hechos al estimar el valor probatorio del testimonio del testigo. Así también, las circunstancias presentes en este caso, tales como la nerviosidad y excitación del testigo de cargo, la escasa luz y el tiempo limitado

---

(¹) En el curso del contrainterrogatorio, el testigo Pedro Martínez afirmó que tenía amistad con la víctima, iban al cine y a la playa juntos y se "paseban juntos" (T.E. págs. 34–35).

durante el cual el testigo pudo observar al apelante durante y después de perpetrarse los hechos sin duda alguna pueden afectar la credibilidad del testimonio del testigo pero no necesariamente la admisibilidad de su declaración.

No nos impresiona la aparente contradicción del testigo Martínez con respecto al tiempo durante el cual observó al atacante en el instante de la agresión (unas veces atestó haberlo observado por tres o cinco minutos y en otras ocasiones declaró que fue durante unos segundos), pues es de conocimiento general la inexacta noción que del tiempo y del espacio generalmente poseen los testigos de poca instrucción.(²) *Navarro* v. *Compañía Azucarera "El Ejemplo"*, 53 D.P.R. 726, 731 (1938).

La identificación del apelante en el caso ante nos no presenta una identificación tan viciada que como cuestión de derecho haga constitucionalmente inadmisible la misma sino más bien presenta una cuestión de la credibilidad que ésta merecía al juzgador. *Cf. Foster* v. *California*, 394 U.S. 440, 443 (1969). Siendo ello así, resolvemos que la identificación del apelante mediante fotografías, en la forma en que fue efectuada, fue suficientemente confiable para sostener la convicción del acusado, adjudicando así vigencia efectiva al respeto y deferencia que este Tribunal confiere a las determinaciones de hechos y a la apreciación justiciera de la prueba que forjan los tribunales sentenciadores. Son estos tribunales los que ven y oyen los testigos, privilegio indiscutible que los tribunales apelativos reconocen cuando la revisión se refiere y limita a la apreciación de la prueba y a la confiabilidad de los testigos. En ausencia de parcialidad, prejuicio o error claro y

_____

(²) El testigo Pedro Martínez parece estar en este grupo, por ser una persona de escaso vocabulario, a quien se le hace difícil precisar espacio, tiempo y distancia, y quien tenía pobres calificaciones académicas. Además, el joven Martínez contaba 14 años de edad a la fecha del juicio y solo había alcanzado el séptimo grado de escuela elemental, habiendo fracasado en un año académico. (T.E. págs. 44–46.)

manifiesto, este Tribunal respetará la apreciación de la prueba que hizo el tribunal de instancia.

*Se confirmarán los sentencias apeladas.*

