HUMBERTO PAGÁN HERNÁNDEZ, peticionario y apelante, *v.* TOMÁS MORALES BENTEGEAT, ALCAIDE DE LA CÁRCEL LA PRINCESA, demandado y apelado.

*Número*: O-71-223 *Resuelto*: 21 de marzo de 1974

Compuesto el Tribunal a esta fecha por ocho Jueces, el Juez Asociado Señor Dávila emitió opinión para revocar con la cual concurren los Jueces Asociados Señores Torres Rigual y Cadilla Ginorio. El Juez Asociado Señor Martín se reservó el derecho de emitir un voto separado.

*Roberto José Maldonado, Julio Eduardo Torres, Manuel E. Moraza Choisne, Noel Colón Martínez, Gilberto Concepción Suárez, Graciany Miranda Marchand, abogados del ape-*

*lante;* ([1]) *Gilberto Gierbolini, Procurador General, y Américo Serra, Procurador General Auxiliar, abogados del apelado.*

—O—

*Número:* O-71-223 *Resuelto:* 31 de mayo de 1974

---

([1]) Los cuatro últimos abogados del apelante radicaron el 8 de febrero de 1974 una moción de renuncia de representación profesional, no habiendo provisto nada el Tribunal al 21 de marzo de 1974.

*Graciany Miranda Marchand, Manuel E. Moraza Choisne* y *Julio Eduardo Torres,* abogados del apelante; *Américo Serra* y *Peter Ortiz, Procuradores Generales Auxiliares,* abogados del apelado.

—O—

OPINIÓN EMITIDA POR EL JUEZ ASOCIADO SEÑOR DÁVILA con la cual concurren los Jueces Asociados Señores Torres Rigual y Cadilla Ginorio.

San Juan, Puerto Rico, a 21 de marzo de 1974

Antes de entrar a considerar los méritos del presente recurso de hábeas corpus es pertinente consignar que el peticionario abandonó la jurisdicción de los tribunales de Puerto Rico estando pendiente de perfeccionarse el recurso de apelación que había interpuesto contra la negativa del Tribunal Superior, Sala de San Juan a expedir el auto. Esta actuación suya relevaba al tribunal de resolver el recurso mientras estuviera ausente de esta jurisdicción. *Cf. Molinario* v. *New Jersey,* 396 U.S. 365 (1970).

Previo a considerar si la prueba presentada por el Estado para establecer la legalidad de la detención de Humberto Pagán es *prima facie* suficiente, es necesario determinar si la

misma es admisible en evidencia. (¹) La prueba presentada sobre la identificación del peticionario no es confiable. La identificación de un acusado, si no es confiable, no es admisible en evidencia, cuestión a ser determinada por el tribunal como cuestión de derecho ya que envuelve una violación al debido procedimiento de ley. *Pueblo v. Gómez Incera*, 97 D.P.R. 249 (1969) ; *United States v. Wade*, 388 U.S. 218 (1967) ; *Gilbert v. California*, 388 U.S. 263, 272–273 (1967) ; *Stovall v. Denno*, 388 U.S. 293 (1967) ; *Simmons v. United States*, 390 U.S. 377 (1968) ; *Foster v. California*, 394 U.S. 440 (1969) ; Nota, *"Pretrial Identification Procedure"*, 55 Minn. L. Rev. 779 (1971) ; Sobel, *Eyewitness Identification*, Sec. 9 pág. 19 (1972). En *Foster v. California*, supra, se expuso que "es la enseñanza de *Wade, Gilbert* y *Stovall*, que en algunos casos el procedimiento de identificación por testigos oculares puede ser tan defectuoso que hace la identificación constitucionalmente inadmisible como cuestión de derecho. . . ." (Escolio 2.)

La identificación en corte durante el juicio no puede tener el efecto de curar el vicio de la identificación llevada a cabo en la etapa investigativa. *Pueblo v. Gómez Incera*, supra, a la pág. 253, *et seq.*, expresa: "La identificación en el juicio estaría maculada por los vicios de que adoleció la llevada a cabo en la etapa investigativa. Ver *People v. Caruso*, supra; IV Wigmore, *On Evidence*, Sec. 1130 (ed. 1940). Los testigos ya habían determinado que el acusado era el responsable. La identificación durante el juicio resulta una mera formalidad. Como se expresó en el artículo escrito por Williams and Hammelmann, *supra*, y que citamos de *Wade* a la pág. 229: 'La experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se

---

(¹) En *Santiago Meléndez v. Rodríguez, Alguacil* 102 D.P.R. 71 (1974), resolvimos que el procedimiento para atacar la validez de una determinación de causa probable es mediante moción de desestimación bajo la Regla 64(p). En vista de que en este recurso ya se presentó la prueba, a nada conduciría desestimar el mismo para que se radicara moción de desestimación congestionando aún más el calendario del Tribunal Superior.

retracte más tarde, de tal manera que en la práctica la contro-
versia de la identificación puede (en la ausencia de otra evi-
dencia relevante) para todos los propósitos prácticos ser
determinada en ese momento, antes del juicio. . . .' " En
*Pueblo* v. *Ruiz Ramos*, 99 D.P.R. 812 (1971), reiteramos este
criterio al expresar que "la identificación del acusado durante
el juicio por el testigo de cargo es la menos confiable y más
sugestiva de todas las identificaciones, especialmente en un
caso como el de autos en que esa identificación está precedida
por identificaciones extrajudiciales, también manchadas de
sugestividad y de poca o ninguna confiabilidad."

No puede haber un juicio justo e imparcial si no se garan-
tiza debidamente la forma de identificar a la persona que se
acusa de la comisión de un crimen. Los mayores extravíos en
la administración de la justicia lo ocasionan los errores en la
identificación de los acusados. E. M. Borchard, en su estudio
*"Convicting the Innocent"*, publicado en 1932, recopila 65
casos en que se condenó a personas inocentes en las cortes de
los Estados Unidos e Inglaterra. Veintinueve de estas convic-
ciones erróneas se basaron en un error en la identificación del
acusado. *Cf.* Williams & Hammelmann, *Identification Para-
des*—I, 1963, Crim. L. Rev. 479.

La forma más confiable para el reconocimiento de una
persona es poniendo a la vista del que hubiere de verificarlo
la persona que haya de ser reconocida, haciéndola comparecer
en unión con otras de circunstancias exteriores semejantes.
*United States* v. *Wade*, 388 U.S. 218 (1967); *Simmons* v.
*United States*, 390 U.S. 377 (1968).

En ciertas ocasiones se puede dispensar de este requisito,
como cuando la identificación se realiza poco tiempo después
de occurrido el acto delictivo, pues se reconoce que todavía
está fresca en la memoria la imagen de la persona. Pero a
pesar de que reconoce esta excepción, el hoy Juez Presidente
de los Estados Unidos, cuando servía en la Corte de Apela-
ciones para el Distrito de Columbia expresó en *Bates* v.

*United States,* 405 F.2d 1104 (D.C. Cir. 1968) : "Trabajo policial prudente requiere la limitación de estas identificaciones en el lugar de los hechos a situaciones en que hay que resolver prontamente posibles dudas sobre la identificación; en ausencia de dicha necesidad, la rueda de confrontación convencional es el procedimiento apropiado."

También se reconoce como excepción la identificación por fotografías, pero se apunta que resulta un reconocimiento más confiable, si luego de haber llevado a cabo la identificación por fotografías, se muestra al sospechoso en una rueda, *Simmons* v. *United States,* supra, escolio 6. Ver además, Nota, *Photographic Identification; The Hidden Persuader,* 56 Iowa L. Rev. 408 (1970).

En *Pueblo* v. *Morales Romero,* 100 D.P.R. 436 (1972), sancionamos en esta jurisdicción la identificación por fotografías. Expresamos que "el reconocimiento del acusado a los dos o tres días después de la comisión del delito de entre varias fotografías presentadas a la perjudicada, unida a la identificación que ésta hizo del acusado entre varios detenidos en el cuartel cuando aún no se había radicado acusación contra el acusado, da tal certeza a la identificación que excluye cualquier posibilidad de que el procedimiento utilizado esté viciado en forma alguna que pueda constituir una violación del debido procedimiento de ley." Ver además *Pueblo* v. *Figueroa Torres,* 102 D.P.R. 76 (1974).

Expuestos los principios legales, toca ahora determinar si la identificación llevada a cabo en el presente caso cumple con las normas antes expuestas o si por el contrario es tan poco confiable que constituye una violación del debido procedimiento de ley, y por lo tanto inadmisible en evidencia.

Con motivo de una violenta protesta estudiantil en el recinto de la Universidad de Puerto Rico, se solicitó intervención de la policía estatal. Acudieron a la llamada 42 agentes de la unidad de reserva especializada—fuerza de choque— bajo el mando del Comandante Mercado. Al llegar encontra-

ron una muchedumbre de personas amotinadas atacando el edificio donde estaba ubicado el R.O.T.C. y por los alrededores del edificio conocido como Centro Universitario.

Al terminar los sucesos, seis policías resultaron heridos de bala. El Comandante Mercado fue muerto de un balazo. El segundo en comando, Teniente Atilano, identificó a Humberto Pagán como la persona responsable de haber disparado el arma homicida. Declaró que estando a una distancia aproximada de cincuenta pasos del monumento a Miguel de Unamuno, un sargento le informó que estaban disparando y lo habían alcanzado en el tobillo. En ese mismo instante se percata de que Mercado, a diez pasos de él, y a cuarenta del monumento, se está tambaleando. Instintivamente mira hacia el monumento y observa a una persona disparando en dirección hacia Mercado. Al describir a dicha persona se limita a expresar que era "un individuo de unos cinco pies y nueve pulgadas más o menos, blanco él, de patillas." Declara asimismo que en ese momento escuchó varias detonaciones, provenientes "de los árboles así del frente y al mismo tiempo del monumento." Utiliza la palabra "balacera" para describir la situación que presenció. El testigo comenzó a acercarse al monumento pero la persona que había visto disparando retrocedió y se mezcló en la multitud. Sólo lo pudo observar ese instante a una distancia de treinta y cinco pasos (70) pies. Bajo estas circunstancias, observando a 75 pies del monumento, en momentos de tensión, nerviosismo y honda preocupación se hace difícil si no imposible, reconocer a una persona y surgen serias dudas sobre la confiabilidad de la identificación. Y ya hemos visto que al describirlo da muy pocos detalles. No hay otra evidencia que sitúe al peticionario en los alrededores del sitio donde ocurrieron los hechos.

Vale aquí recordar lo expuesto por un Juez de la Corte Suprema de Nueva York, Sobel, *Criminal Identification*, 38 Brooklyn L. Rev. 261 (1971): "Muchos jueces han concluido que lo más que casi todos los testigos oculares pueden retener

en su memoria es el recuerdo de los evidentes dos ojos, una nariz y una boca. Siempre es motivo de preocupación el hecho de que la culpabilidad o inocencia gire exclusivamente alrededor de un testimonio de identificación sin que exista evidencia adicional para relacionar al acusado con el crimen." Y lo expresado por Jerome & Barbara Frank en su obra *Not Guilty* (1957) a la pág. 61 "No hace mucho un experimentado abogado escribió: 'Un análisis del testimonio de 20,000 personas a quienes se les pidió que describieran las características físicas del hombre a quien ellos vieron cometer un crimen, reveló que, en general, ellos sobreestimaron la estatura por 5 pulgadas, la edad por 8 años y en un 82% de los casos se equivocaron en el color del pelo'. De manera que en cientos de casos testigos honestos, completamente seguros de sí mismos, han identificado erróneamente a una persona, pero afortunadamente para la mayor parte de los acusados, cada uno de ellos pudo ofrecer evidencia irrefutable de que él estaba en otro lugar al momento de cometerse el crimen."

A los dos días el testigo identificó al peticionario en el cuartel de la policía al mostrársele por dos agentes del C.I.C. varias fotos de personas fichadas junto a la del peticionario. El Estado debió haberlas presentado para demostrar que el reconocimiento se había efectuado correctamente.

Conforme a lo expuesto, es inescapable la conclusión que de acuerdo a los principios legales aplicables, la identificación del peticionario no es suficientemente confiable y no cumple con los requisitos del debido proceso de ley. Lo procedente hubiera sido luego de arrestado presentarle al peticionario junto a otras personas con circunstancias exteriores semejantes. Era la única manera de darle visos de confiabilidad a la identificación. Reiteradamente hemos expresado que debe ser práctica generalizada el utilizar este procedimiento para el reconocimiento de los sospechosos de haber cometido un acto delictivo. *Pueblo* v. *Tanco,* 101 D.P.R. 75 (1973); *Pueblo* v. *Montañez Ramos,* 100 D.P.R. 911 (1972). Este

procedimiento estuvo vigente en Puerto Rico en el pasado siglo. Ver *Gómez Incera,* pág. 255. Importa apuntar que como parte de la Reforma Judicial auspiciada por las Ramas Legislativa, Ejecutiva y Judicial del Gobierno de Puerto Rico, el Gobernador ha recomendado la aprobación de un Proyecto de Ley—P. del S. 746—mediante el cual se establece el procedimiento para la identificación de sospechosos. Este proyecto sigue las normas sugeridas en *Gómez Incera* con más requisitos y detalles.

Es interesante apuntar que el protocolo de la autopsia del Comandante Mercado, admitido en evidencia por el juez de instancia, revela lo siguiente: ". . . la herida de bala ya mencionada en el examen externo, con orificio de entrada en la axilia izquierda revela una trayectoria seguida por el proyectil dentro de este segmento corporal dirigida de izquierda a derecha, de detrás hacia adelante y ligeramente de arriba hacia abajo. Siguiendo esta dirección el proyectil sucesivamente perforó la piel, los tejidos celulares subcutáneos y planos musculares de la región, el borde superior de la 6ta. costilla izquierda y espacio intercostal inmediato superior poco más o menos a nivel de la línea axilar anterior a través de las cuales penetra en la cavidad pleural izquierda. Ya dentro del tórax sucesivamente perforó el lóbulo superior del pulmón izquierdo, el pericardio en su lado lateral izquierdo; el corazón con entrada a nivel del ventrículo y salida en el ventrículo derecho; el pericardio de nuevo, el borde mediastinal del lóbulo inferior del pulmón derecho y la 5ta. costilla derecha para finalmente alojarse el proyectil en las inserciones inferiores del músculo pectoral mayor derecho. A este nivel se recobra un proyectil 0.45 blindado, que presenta la porción superior mucho más estrecha que la mitad inferior."

Los resultados de la autopsia indican una trayectoria de la bala de arriba hacia abajo, mientras que de acuerdo al testimonio del Teniente Atilano, la bala homicida fue disparada por una pistola calibre 45 desde el monumento por una per-

sona que estaba localizada más o menos al mismo nivel que el Comandante y agachado.

Por todo lo antes expuesto soy de opinión que debe revocarse la sentencia apelada y dictarse otra expidiendo el auto solicitado.

—O—

### EN RECONSIDERACIÓN

El Juez Presidente, Señor Trías Monge, emitió la opinión del Tribunal.

San Juan, Puerto Rico, a 31 de mayo de 1974

Debe expedirse el auto de hábeas corpus solicitado y revocarse la Sentencia de este Tribunal de fecha 21 de marzo de 1974. Los hechos se exponen en la Opinión emitida el 21 de marzo de 1974 por el Juez Asociado, Hon. Carlos V. Dávila.

 Diversas razones de ley dictan esta conclusión. En primer término, el procedimiento utilizado para identificar al peticionario estuvo claramente viciado de nulidad. La identificación por fotografías bajo circunstancias que no induzcan a la sugestión o que no permitan o exijan la utilización de otros métodos de identificación más confiables es permisible. *Simmons* v. *United States*, 390 U.S. 377 (1968); *Pueblo* v. *Montañez Ramos*, 100 D.P.R. 911 (1972). De ser posible recurrir a modos más conducentes a una determinación menos incierta de la identidad del infractor, sin embargo, éstos deben emplearse. *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969); *Photographic Identification: The Hidden Persuader*, 56 Iowa L. Rev. 408 (1970); *Recent Development-Identifications: Unnecessary Suggestiveness May not Violate Due Process*, 73 Colum. L. Rev. 1168, 1179–1180 (1973). La identificatión por rueda de detenidos, por ejemplo, bajo garantías adecuadas, en un método más aceptable. *United States* v. *Wade*, 388 U.S. 218 (1967); *Gilbert* v. *California*, 388 U.S. 268 (1967); *Stovall* v. *Denno*, 388 U.S. 293 (1967). De lo

anterior pueden deducirse dos principios generales. El primero es que la validez de una identificación, no obstante el procedimiento empleado, debe precisarse a la luz de las circunstancias particulares de cada caso. *Simmons, supra,* a la pág. 383; *Neil* v. *Biggers,* 409 U.S. 188 (1972). El segundo es que, dada la escasa confiabilidad de por sí de la identificación por fotografías, puede dependerse exclusivamente de tal procedimiento tan solo en situaciones donde sea imperioso su uso. Nota, *Pretrial Photographic Identification—a "Critical" Stage of Criminal Proceedings?,* 21 Syracuse L. Rev. 1235, 1241 (1970).

En el Informe de 15 de diciembre de 1973 sometido por la Comisión para el Estudio de la Policía al Consejo sobre la Reforma de la Justicia en Puerto Rico se reconoce la necesidad de reglamentar los procedimientos de identificación anteriores al juicio (págs. 142 y ss.) y que solo por circunstancias extraordinarias y fuera del control de la Policía podrá abandonarse el procedimiento de rueda de detenidos. (pág. 146.) Con relación a la utilización de fotografías como procedimiento de identificación se expresa que deberá utilizarse únicamente en las siguientes circunstancias, entre otras:

1. "Cuando por razones fuera del control de la Policía no fuese posible o necesario realizar una rueda de detenidos.

2. Cuando no exista sospechoso del acto delictivo." (Pág. 158.)

Las disposiciones citadas forman parte del P. del S. 746, radicado el 19 de marzo de 1974.

▮▮▮ Los hechos del presente caso demuestran con toda claridad las deficiencias en el proceso de identificación empleado. A los dos o tres días de los lamentables sucesos de violencia ocurridos en terrenos del Recinto de Río Piedras de la Universidad el 11 de marzo de 1971, en que perdió la vida el Comandante de la Policía Juan B. Mercado, se le mostraron al único testigo entre veinte y veinticinco fotografías, una de las cuales identificó como la correspondiente al peticionario

y alegado causante de la referida muerte, Humberto Pagán Hernández. No obra en autos, sin embargo, indicación alguna representativa de impedimento para la identificación por rueda de detenidos y ante tales circunstancias era inadmisible, bajo los principios señalados, la prueba de identificación realizada. Mas en el curso de la vista el pasado 20 de mayo de la moción de reconsideración surgió un dato adicional que refuerza la conclusión que precede. En la referida vista, el Ministerio Público admitió para el récord un vital dato, que consta de los procedimientos de extradición canadienses pero que no era utilizable antes por este Tribunal al resolver el caso en marzo pasado por no haber sido hasta ahora parte formal de los autos. El dato es que antes de escogerse las fotografías para mostrárselas al testigo la Policía había recibido una confidencia al efecto de que el peticionario era alegadamente el culpable. Existía, por lo tanto, un sospechoso. En tales circunstancias, se violó la cláusula sobre el debido proceso de ley de la Constitución de Puerto Rico, Art. II, Sec. 7 al no someterse a la persona de quien se sospechaba al sistema de identificación por rueda de detenidos. El error no puede corregirse en este tipo de situación mediante la formación ahora de tal rueda. Rouse, A. M., *Are We in Focus on Photo Identification?*, 7 Univ. J. S. Francisco L. Rev. 419, 422 (1973).

En segundo lugar, cometió error el tribunal de instancia al denegar la solicitud de la defensa de que se mostrasen las fotos alegadamente examinadas por el testigo y que sirvieron de base para la identificación del peticionario. La identificación, con anterioridad o posterioridad a la acusación, es ciertamente una de las etapas más críticas en todo proceso criminal. *Pretrial Photographic Identification—a "Critical" Stage of Criminal Proceedings?*, supra, a la pág. 1242. Dada la naturaleza de la identificación por fotografías, tan inherentemente susceptible a la comisión de errores, es indispensable que se le permita a la defensa colocarse en posición de examinar la legitimidad de la identificación por tal método a

la primera ocasión oportuna. El simple inicio de procedimientos criminales contra un ciudadano es usualmente motivo de zozobra. La espera antes del juicio, no importa el resultado, es de hecho parte del castigo, razón por la cual existe el derecho constitucional de todo acusado a un juicio rápido. Requerir que la validez de una identificación por fotografías no pueda ventilarse hasta el momento del juicio equivale, en términos humanos, a la imposición de una pena antes de conocerse la identidad del penado y, en términos jurídicos, a la severa e ilegal restricción del auto de hábeas corpus.

■ En tercer término, por las razones expresadas en la referida opinión del Juez Asociado Señor Dávila, independientemente de los errores hasta aquí señalados, la prueba presentada por el Estado para justificar la detención de Humberto Pagán no es suficiente en derecho.

Debemos examinar, por último, la contención del Estado de que *Simmons* v. *United States*, 390 U.S. 377 (1968), sostiene la validez de la identificación. Diferimos.

■ Aparte de que este Tribunal al interpretar las disposiciones correspondientes de la Constitución del Estado Libre Asociado puede establecer criterios más exigentes que los establecidos por el Tribunal Supremo de los Estados Unidos, lo cierto es que *Simmons* presenta una situación de hechos completamente diferente a la que consideramos en este caso. Las fotos en *Simmons* se mostraron separadamente a cinco empleados, quienes habían tenido tiempo más amplio que en el actual litigio para observar al presunto infractor. En días subsiguientes les volvieron a mostrar distintas fotos y en todo momento identificaron al acusado. Es de advertir también que había otra evidencia que conectaba a Simmons con los hechos investigados. En el caso presente no se dieron las circunstancias especiales que se dieron en *Simmons* donde, según se recordará, el Tribunal Supremo de los Estados Unidos recalca que cada caso en este campo debe resolverse de acuerdo con sus particulares hechos. 390 U.S. 377, 384.

Debe, por lo tanto, revocarse la Sentencia de este Tribunal de fecha 21 de marzo de 1974 y dictarse otra expidiendo el auto solicitado.

Los Jueces Asociados Señores Díaz Cruz e Irizarry Yunqué concurren con el resultado en votos separados. El Juez Asociado Señor Martín devolvería el caso al tribunal de instancia para la celebración de una vista para los propósitos que se consignan en su opinión disidente. El Juez Asociado Señor Marco A. Rigau, no intervino.

—O—

Voto particular del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 31 de mayo de 1974

Concurro en el resultado de la opinión de mayoría. Considero, no obstante, que su valor de precedente debe limitarse a su justa perspectiva.

En ausencia de error flagrante este Tribunal no debe intervenir con la decisión del Tribunal Superior en hábeas corpus, o en cualquier otro recurso cuestionando la suficiencia y confiabilidad de la prueba para determinación de causa probable. El principio, aun en la alternativa de una determinación adversa al acusado, no tiene otra consecuencia que remitir la cuestión factual al juicio pleno por juez o por jurado que es el foro por excelencia para depurar los hechos y hacer justicia.

Ante la realidad de que la evaluación de prueba para decidir si hay o no suficiente identificación del acusado que amerite someterlo a juicio es, en casos intermedios, función de extenuante facultad estimativa; que no hay, ni pueden haber, criterios tangibles sobre el grado de prueba que justifique la liberación por hábeas corpus o bajo la Regla de Procedimiento Criminal 64 (p) y qué otro grado requiere que la justicia se haga en juicio público por tribunal de derecho o con la intervención del pueblo mismo en la integración del jurado, considero que este Tribunal debe expresarse al efecto de que

el gran recurso no habrá de abolir el juicio en todo caso de identificación cuestionada por insuficiencia o falta de confiabilidad de la prueba en que descansa.

Sin embargo, en el presente caso el voto concurrente del Juez Presidente destaca una confidencia que al inducir con perniciosa sugestividad la identificación del acusado la hizo inadmisible. Esta circunstancia no alcanzó relieve en la prueba ante el tribunal a quo donde el énfasis recayó sobre cuestiones de hechos propias para ser resueltas en el juicio. Habiendo salido a la luz el intolerable acto de identificación inducida por confidente que se mantiene en la sombra uno mi voto en favor del hábeas corpus en este caso específico.

—O—

Voto particular del Juez Asociado Señor Irizarry Yunqué, concurriendo con el resultado.

San Juan, Puerto Rico, a 31 de mayo de 1974

Cuando en marzo de este año se circuló por el hermano Juez Señor Dávila su ponencia proponiendo la revocación de la sentencia apelada y la expedición del auto solicitado expresé que concurría con el resultado por motivos no consignados en dicha ponencia. Al tomarse el voto de los jueces y quedar el Tribunal igualmente dividido, quedaba automáticamente confirmada la sentencia apelada, y no me pareció necesario hacer constar mi posición.

Opinaba entonces, y sustento ahora el mismo criterio, que la prueba que tuvo ante sí el tribunal a quo es insuficiente en Derecho para sostener una determinación de causa probable. Ese criterio se reforzó aun más luego de escuchar los informes orales en la vista celebrada el día 20 de los corrientes en ocasión de entender este Tribunal en la solicitud de reconsideración presentada por el apelante.

Independientemente de lo poco confiable del procedimiento de identificación mediante fotografías que fuera expuesto en

el testimonio del señor Atilano, ampliamente discutido en la opinión del Juez Señor Dávila, no creo que ese testimonio, única prueba presentada por el Estado en la vista del hábeas corpus, aun si admisible, sea suficiente para permitir que el apelante sea sometido a juicio.

La determinación de causa probable no debe concretarse a la investigación de si hay prueba para sostener todos los elementos esenciales del delito imputado. El juez no debe dejar de ser juzgador de hechos en ningún momento. Si bien en esa etapa no se va a celebrar juicio al acusado y por tanto no se exige que se pruebe su culpabilidad más allá de duda razonable, el juzgador debe convencerse de que la prueba con que cuenta el ministerio público, además de cubrir todos los extremos de la acusación, es creíble y puede pasar el tamiz de un juicio justo e imparcial.

Durante la vista del hábeas corpus, se investigaba la legalidad de la detención de Humberto Pagán. El efecto también tenía que ser la investigación de las probabilidades de que Humberto Pagán hubiera cometido los hechos que el Teniente Atilano, y nadie más que él, le imputaba. El juez no podía estar ajeno al clima de histeria que se produjo como consecuencia de los lamentables sucesos sangrientos que habían ocurrido en la Universidad. En ocasiones como esas es precisamente que se pone a prueba el sentido de ponderación y de obligada serenidad que deben prevalecer para que haya objetividad en la búsqueda incisiva de la verdad.

El apelante tenía derecho a investigar en el hábeas corpus todos los pormenores en las incidencias que condujeron a su identificación como el alegado asesino del Comandante Mercado. A mi juicio ese derecho se le negó cuando se sostuvo la objeción del fiscal a presentar las fotografías que supuestamente sirvieron de base a la identificación. No había razón legal alguna para ello, y así quedó confirmado por el propio ministerio público cuando aceptó durante la vista oral ante este Tribunal, que las fotografías se presentaron en la vista

sobre extradición ante el tribunal de Canadá. Ante la incon-
sistencia del ministerio público en asunto tan importante, la
duda ha de existir siempre sobre si realmente hubo tales
fotografías en el procedimiento de identificación y, de haber-
las habido, si las que vio Atilano fueron las mismas que se
presentaron en Canadá.

La versión dada por el testigo Atilano, tomada a la luz
del certificado sobre la autopsia, se hace aún más dudosa.
Según reveló la autopsia, la bala homicida siguió una trayec-
toria diagonal descendente a través del pecho de la víctima.
Atilano señaló que vio al apelante disparando desde el monu-
mento a Unamuno, más o menos al mismo nivel en que se en-
contraba el Comandante Mercado. También dijo que otras
personas disparaban desde los árboles, en lo que describió como
una "balacera." En ausencia de alegación alguna de que los
que disparaban actuaban al así hacerlo en concierto y de
común acuerdo, no podría, a mi juicio, inculparse específica-
mente a la persona que estaba tras el monumento, quien-
quiera que fuese, del delito de asesinato.

En resumen, la prueba que presentó el fiscal en la vista
del hábeas corpus no puede sostener una determinación de
causa probable válida en Derecho. Por eso concurrí desde un
principio y concurro en que debe revocarse la sentencia del
tribunal a quo.

El Juez Presidente Señor Trías Monge y el Juez Asociado
Señor Cadilla Ginorio concurren en el resultado.

—O—

Opinión disidente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 31 de mayo de 1974

Disiento de la opinión del Tribunal. No acierto a compren-
der cómo puede considerarse viciada la identificación que del
peticionario hizo el Teniente Atilano mediante las "veinte o
veinticinco" fotografías que le fueron mostradas a menos que

del testimonio de las personas que le mostraron las fotografías y de la prueba de las fotografías mostrádales surja que el proceso de identificación fuera altamente sugestivo o de poca o ninguna confiabilidad.

El peticionario tenía el derecho de interrogar a los agentes del C.I.C. que participaron en la mostración de fotografías al Teniente Atilano, así como a examinar las fotografías que le fueron mostradas y a interrogarlos con respecto a la procedencia de las mismas, la forma en que fueron seleccionadas y sobre cualquier confidencia que hubiere recibido con respecto a la identidad del sospechoso. Para una determinación de causa probable válida es indispensable una identificación pre-juicio justa y confiable. No debe pues privarse al peticionario de demostrar que tal identificación constituye una violación del debido procedimiento de ley. Véase *Hoyos* v. *Tribunal Superior*, 80 D.P.R. 633, 642–645 (1957). La negativa del juez de instancia a conceder lo solicitado por el peticionario constituyó error. Es por ello que devolvería el caso al tribunal de instancia para que se cite a los agentes del C.I.C. concernidos y se ordene traigan consigo todas las fotografías que fueron examinadas por el Teniente Atilano, para darle oportunidad al peticionario a interrogar sobre todo lo concerniente al proceso de identificación. El tribunal de instancia podría entonces estar en condiciones de hacer las determinaciones procedentes.