172

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WEL-
LINGTON ASKANIO PETERSON PIETERSZ, JOSÉ CONFESOR
TAVÁREZ VILLA y VÍCTOR MORALES SANTANA, acusados y
apelantes.

*Número:* CR-77-71    *Resuelto:* 10 de mayo de 1978

*Benigno Alicea Alicea, Carmen Ana Rodríguez Maldonado, E. L. Belén Trujillo* y *Orlando J. Muñiz,* abogados de los apelantes; *Héctor A. Colón Cruz, Procurador General,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Los apelantes fueron convictos, en juicio por jurado, de delitos de robo e infracción de los Arts. 8A, 8 y 6 de la Ley de Armas cometidos en el curso de un asalto al establecimiento Burger King de San Patricio Plaza, efectuado a las 5:00 P.M. del 29 de marzo de 1976 en momentos

en que estaba allí detenido para tomar un depósito un vehículo blindado de Wells Fargo. En robo a mano armada sustrajeron más de $300,000 en dinero y cupones de alimentos del camión y $7,000 del negocio. El Tribunal Superior, Sala de San Juan, les impuso sentencias de reclusión a todos los acusados.

En su alegato formulan los siguientes señalamientos de error:

"1. Una vez efectuado el arresto y durante la etapa investigativa a los apelantes no se les hicieron las advertencias de rigor establecidas en el caso de *Miranda* v. *Arizona,* 384 U.S. 436, así como les fue negado su derecho a estar debidamente asistidos por un abogado, a pesar de haberlo solicitado.

2. A. Se llevó a efecto un procedimiento de identificación mediante el uso de fotografías en el cual se violaron todas las disposiciones establecidas en la Regla 252.2 de Procedimiento Criminal, constituyendo tal actuación una violación al debido proceso de ley.

B. Se llevó a efecto un procedimiento de identificación mediante rueda de detenidos en el cual se violaron todas las disposiciones establecidas en la Regla 252.1 de Procedimiento Criminal, constituyendo tal actuación una violación al debido proceso de ley, así como una violación al Artículo II, Sec. 11 de la Constitución al negárseles el derecho a estar asistidos por un abogado durante el procedimiento."

■ El primer señalamiento, al que dedican diez páginas de su alegato, es de patente frivolidad toda vez que en el juicio no se presentaron confesiones ni admisiones extraídas a los acusados en la etapa investigativa.

■ El segundo señalamiento no tiene méritos, mas la deseabilidad de que esta cuestión de suficiencia y confiabilidad de la identificación tenga reposo nos lleva a una prolija exposición y análisis de la prueba, que en otras circunstancias resolveríamos con brevísima sentencia. ([1])

---

([1]) Recientemente reiteramos la norma de revisión de sentencias criminales, ajustada al siguiente criterio:

Surge de la exposición narrativa de la prueba que los apelantes son personas de avanzada instrucción empeñados en una lucha ideológica contra el régimen de la República Dominicana. Siguen el método de "guerrillas urbanas" tratando de financiar su subsistencia y actividades mediante robos, y por desgracia no practican su activismo armado en su patria, sino en la nuestra.

Vamos a los *hechos* que llevaron al ánimo tanto del juez como del jurado, que los apelantes Peterson, Tavárez Villa y Morales Santana fueron los autores del robo al Burger King y al camión de Wells Fargo el día de autos. Según aparece de la extensa Exposición Narrativa de la Prueba que consta de 84 páginas, se les identificó así:

I *Apelante Wellington Askanio Peterson Pietersz*

1. Testigo Gladys Fontánez, cajera del Burger King cumplió la orden de los asaltantes de tirarse al piso, pero levantaba la cabeza y miraba, por lo que hubo de repetirle la orden una y otra vez. (E.N.P. pág. 2.) "Al volver a subir la cabeza vio al acusado W. A. Peterson parado con un rifle[2] en las manos hacia abajo. Tenía una gorra y estaba de frente a ella y a una distancia aproximada de 35 a 40 pies."

"En todo recurso de apelación la función de este Tribunal se cumple revisando el legajo de la sentencia guiado por los señalamientos de error o planteamientos de derecho del apelante hasta quedar satisfecho de que el acusado tuvo un juicio imparcial y objetivo. Hay que recordar que todo acusado tiene derecho a un juicio justo, que no significa necesariamente un juicio perfecto. Este Tribunal intervendrá con el veredicto del jurado o el fallo del juez de derecho únicamente cuando esté enervado por error que hiere derechos fundamentales de la persona y que en su proyección y consecuencia estremezca el sentido básico de justicia. El énfasis insistente en recursos técnicos de procedimiento criminal muy poco adelanta la causa si no plantea la vindicación de un derecho. El procedimiento ha adquirido una exhuberancia que a veces nos oculta el tronco, el diseño fundamental de 'juicio rápido y público' que en sencilla depuración de la prueba sirva tanto al derecho del ofensor como al de la sociedad agraviada." *Pueblo* v. *Díaz Ríos*, 107 D.P.R. 140 (1978).

(2) La testigo ve un arma parecida entre las ocupadas en residencia de Round Hills. (E. N. P. pág. 40.)

(E.N.P. pág. 3.) Estaba tranquila como si estuviera viendo una película, ya que "creyó que se trataba de otro asalto a la tienda y hay órdenes de entregar el dinero si eso ocurre." (E.N.P. pág. 5.) Ese mismo día y en los días siguientes la Policía le llevó fotos pero no identificó(³) a los acusados en ellas (*ibid.* pág. 5). "Unos días antes de que la Policía cogiera a los acusados, ella le dio la descripción a un dibujante y éste preparó un dibujo . . . ." de Peterson Pietersz. (E.N.P. pág. 7.)

2. *Testigo Angel Santos Romero.* Trabajaba en el camión de Wells Fargo. Estuvo en la Guardia Nacional. (E.N.P. pág. 10.) Lo llevaron el mismo día de los hechos al Cuartel para mostrarle retratos. No estaban los acusados en esos retratos. *Ibid.* pág. 10. (No podían estar porque la Policía no tenía retratos de los acusados todavía. Su sinceridad confirma a la cajera.) Tiene 3 años de Colegio. *Ibid.* pág. 11. Vio a W. Peterson, haciendo una compra en el Burger King. *Ibid.* pág. 13. Tenía licencia para tener y poseer el revólver que le quitaron los asaltantes. (E.N.P. pág. 14.) "El día de los hechos dio una descripción de los asaltantes al F.B.I., le dijo que uno tenía los ojos brotados, y cuanto medían." *Ibid.* pág. 15. Los últimos tres minutos los pasó tirado en el piso y no podía mirar hacia el lado. *Ibid.* pág. 10. Al ocurrir el asalto notó el acento dominicano de los acusados. *Ibid.* pág. 16. El 27 abril, 1976, un mes después del asalto, identificó a Peterson en *lineup*. "El 27 de abril de 1976 fue el line-up; le mostraron grupos de 5 ó 6 sujetos en línea con un número. El testigo estaba al frente de ellos separado por un cristal por donde miró. Al 1ro. que identificó fue a Víctor Morales Santana, y al lado estaba Tavárez Villa. Fue tres veces al line-up. En el 1ro. identificó a Víctor Morales Santana en el 2do. iden-

(³) Cuando ocurrió el asalto de Burger King y Wells Fargo la Policía no había "fichado" todavía a estos activistas dominicanos, por lo que no tenían fotografías de ellos en su archivo. Cuando los apelantes fueron arrestados y "fichados" en relación con un subsiguiente delito, los testigos no tuvieron dificultad en identificarlos en las fotografías.

tificó a José Tavárez Villa y en el tercero al Sr. W. A. Peterson Pietersz. Los tres no estaban juntos eran personas distintas en cada line-up. Vio diez fotos antes de ir al line-up. Después lo llevaron a la oficina del fiscal F. D. Torres para prestar una declaración jurada. El 29 de marzo de 1976 a las 2:30 lo mandaron a ver unos retratos, un paquetón de retratos. Un álbum de retratos como 150 retratos. Volvió el 27 de abril de 1976 porque lo mandaron a ver fotografías como seis fotos y uno de los tres sujetos aparecía en las fotografías. Después identificó a los tres dominicanos. Lo llevaron al line-up. 'Me mandaron a mirar por un espejo y vio a los asaltantes, vio un grupo de cinco personas'. Hubo tres line-up el primero fue Víctor Morales Santana en el 2ndo había cinco personas e identificó al acusado Confesor Tavárez Villa. En el 3ro. line-up identificó a W.A. Peterson Pietersz, estaban parados en el line-up."

3. *Alicia Rosa Colón*

### Directo

"[El] 29 de marzo de 1976 trabajaba para la Co. Burger King de cajera en San Patricio Plaza. Llegó ese día a las 3:00 P.M. Como a las 5:00 P.M. ella estaba haciendo el cuadre, le tocaba relevar a Gladys como cajera. Después del cuadre se hizo cargo de la caja. Ella se encontraba limpiando las mesas y vio que entró el acusado Pietersz acompañado de otra persona que no está en el Tribunal. El acusado W. P. Pietersz se puso hablar con la otra persona y Pietersz fue al baño, el otro fue hacer la orden hacia la caja y le pidió a ella (Alicia) que ya estaba entrando a la caja, papitas y refresco; después se acercó Pietersz y le pidió refrescos y hamburgers. El otro fue el que pagó, pero Pietersz quedó esperando la orden y después se fue a la mesa. Dice que Pietersz vestía con camisa manga larga de color entero no tenía gabán ni corbata. No recuerda como era el pantalón. La otra persona tenía una guayabera de mangas cortas. Ella fue a la parte de atrás del

negocio a buscar unas cosas y al regresar el acusado Pietersz le pidió dos cafés y ella se los sirvió. Ya Gladys había terminado de trabajar y estaba en el salón. Pietersz fue y se sentó en la mesa con la otra persona de nuevo. Ella volvió a buscar 'cosas para rellenar' y al regresar vio a dos compañeras de ella al frente, pálidas, jinchas. Ella estaba detrás de la máquina de batidas. El salón del Burger King es más grande que el tribunal un poco más. Ella le preguntó a 'Tatie' uno de los empleados ¿que qué pasaba? Se asomó W. A. P. Pietersz y me dijo 'quédese quieta que esto es un asalto', tírese al piso. Ella no le creyó y se le quedó mirando y le repitió que esto es un asalto. Se arrodilló, no se tiró al piso, se sintió un silencio. Había muchos clientes, hora del rush. Ve a Wellington que tenía una boina, no la tenía la primera vez que lo vio, era amarilla, tejida que [le] llegaba hasta la frente, él pasó de largo, llegó hasta la caja, notó que su pelo era negro. Al momento en que le dijo que esto era un asalto tenía unas gafas puestas pero no la boina. No creyó que fuera un asalto porque lo había visto comiendo. Vio que debajo del brazo [tenía] un arma; la culata era algo largo [sic], era brown la culata; vio el gatillo del arma y usó el dedo para ilustrarlo. Debajo del brazo, de las axilas, tenía la culata mientras la mano derecha la tenía en el gatillo. Cuando fue a la caja no tenía el arma, no vio a nadie más. Después volvió a ver a Pietersz otra vez, después que lo arrestaron; en el cuartel general, nos entraron en un cuartito e hicieron un line-up. El line-up fue varias semanas más tarde eran 5 ó 6 personas en el line-up y el acusado Pietersz."

### Contrainterrogatorio

"No ha vuelto a ver al de la guayabera, era trigueño, como del color de ella trigueño claro. No sabe en qué llegó ni en qué se fue Pietersz y su acompañante. Estaba nerviosa, había sufrido shock dos semanas antes habían tratado de violarla, ya estaba más tranquila pero tuvieron que ayudarla

a levantarse. Lo único que pensó en esos momentos fue en Dios; esa es la razón que ella da por haberse arrodillado y no es hasta que Wellington le pasa por el frente que se da cuenta de que es un asalto. Dice que sabe lo que es estado de histeria. En V.P. según la defensa dijo que no podía describir lo que Pietersz tenía debajo de sus brazos. Cuando Pietersz le pidió café sólo tenía gafas, no boina, ésta se la puso después. Las gafas eran obscuras como las de un jurado (Sr. Robles). No vio ella cuando Pietersz se las quitó. Pero al él entrar a la caja ve al acusado Pietersz sin gafas. Cuando fue a pedir el café ahí es que tiene las gafas pero sin boina. Ella sabe lo que es un arma larga. El día de los hechos habló con un agente sobre los hechos; no sabe su nombre, no era Ramos. Le prestó declaración jurada al fiscal en San Juan. Dice que declaró en V.P. y aquí también, no declaró en Habeas Corpus ante el Juez Hernández Carrión." E.N.P. págs. 17–19.

4. *Eduardo Quiñones Ortiz.* Es gerente de Burger King. La cajera Gladys Fontánez estaba cuadrando la caja a las 4:55 P.M. y Alicia Colón la sustituyó. (E.N.P. pág. 29.) Quien dio la orden de tirarse al piso fue Peterson Pietersz, hombre de ojos azules, bigote fu-man-chu. Cuando echaba los $7,752.00 en bolsas por orden de Peterson, éste le dijo que no le mirara la cara. Tenía acento distinto al puertorriqueño. *Ibid.* pág. 29. Dio detalles para un boceto al F.B.I. Varias semanas después identificó a Peterson en fotos que le mostró la Policía. (E.N.P. pág. 31.) Llegó tarde al Cuartel para observar el *lineup*. Sus cajeras Alicia y Gladys le dijeron que ya había pasado. *Ibid.* pág. 32. Un día que estuvo en el tribunal para el juicio, la cajera Alicia le identificó a Peterson por su nombre. El no sabía cuántos asaltantes eran; sólo vio a uno. (E.N.P. págs. 33, 36.) La defensa planteó la cuestión de identificación sugestiva y en ausencia del jurado se examinó al testigo gerente, tanto por el Fiscal como la defensa. (E.N.P. pág. 36.) A pesar de que el juez denegó la moción de supresión de la evidencia el juez de instancia Sr. Batista

trasmitió al jurado la siguiente instrucción especial: (E.N.P. pág. 83.)

"Debido a una Cuestión de Derecho, el Tribunal ha eliminado, por no ser prueba admisible, la parte del testimonio del testigo de cargo, Eduardo Quiñones, referente a la identificación del Sr. acusado, Wellington Askanio Peterson Pietersz y por lo tanto, a los fines de resolver las cuestiones de hechos, les señalo en este momento lo siguiente:

1. Queda descartado y no es admisible el testimonio del Sr. Eduardo Quiñones que sobre la identificación del acusado antes mencionado hiciera en Corte dicho testigo; en su consecuencia el remanente del testimonio de dicho testigo deberá ser dirimido por Uds., los jueces de hecho, conforme a las instrucciones de rigor.

2. Como consecuencia de lo anterior, si la única prueba del Pueblo que les mereciera entero crédito sobre la identificación del referido W.A.P.P., consistiere del testimonio ya descartado, les instruyo y les ordeno que vendrían obligados a rendir un veredicto absolutorio en relación con W.A.P.P. en todos los casos que tienen Uds. ante su consideración."

La SPAL que tomó el caso en apelación no parece haberse percatado de que la defensa no pidió instrucciones especiales en cuanto a identificación sugestiva de Peterson Pietersz por los demás testigos. Al final de la pág. 83 dice E.N.P.: "Las instrucciones no fueron objetadas, expresando la defensa y el Ministerio Público estar conformes y no tener objeción ni reparos que formular."

## II *Apelante Tavárez Villa*

Visto e identificado en el asalto como el hombre con una escopeta o "rifle" por la testigo Gladys Fontánez. Declara que el día de los hechos Tavárez Villa vestía una camisa crema con adornos de azul, pelo más largo, un bigote suave y no tenía barba. "Lo estuvo observando lo suficiente como para poder señalarlo. Lo vio en la sala del Burger King ya que a cada rato la mandaba a callar y a bajar la cabeza. Ella en una

ocasión le dijo a una nena 'mamita cállate'. A ella no le ordenaron nada impropio. A todos allí les ordenaron que pusieran la cabeza sobre las manos, y a ella le llamaban la atención porque en vez de poner la frente sobre las manos ponía sólo la barbilla." (E.N.P. pág. 6.) También lo ubican en el asalto los testigos Angel Santos Romero y Francisco Flores Delgado, auxiliar y chófer, respectivamente, del camión Wells Fargo.

### III *Apelante Morales Santana*

Visto e identificado en el asalto por los testigos cajera Gladys Fontánez, Angel Santos Romero y Francisco Flores Delgado, empleados de Wells Fargo.

En extenuante ejercicio hemos de rebatir aseveraciones de los apelantes sin base alguna en la prueba:

No es la Policía quien informa la extranjería de los acusados a los testigos. La exposición narrativa de la prueba recoge sus testimonios al efecto de que parecían dominicanos por su acento; que no hablaban como puertorriqueños.

Nadie sugirió la identificación de los acusados en la línea de confrontación (*lineup*). La E.N.P. revela la pulcritud de los testigos que no identificaron a los asaltantes en el primer grupo de fotos que se les mostraron el propio día y los días siguientes del asalto al Burger King, cuando la Policía no los había "fichado" y retratado. Sí los identificaron con facilidad cuando se les mostraron las fotos tomadas a los acusados al ser arrestados por el delito subsiguiente. La rueda de detenidos, aun cuando innecesaria ya que la identificación por fotografías franqueaba la vía para la identificación en el juicio (*Manson* v. *Brathwaite*, 432 U.S. 98 (1977)), no estuvo viciada por irregularidades que afectaran derechos sustanciales de los acusados. El procedimiento de confrontación en la línea de detenidos fue justo y limpio. Los pormenores que informan su curso correcto aparecen en las 8 páginas de la E.N.P., entre la 57 y la 65.

La E.N.P. muestra a Gladys Fontánez, no con la cabeza entre los brazos sino levantando la cabeza en su posición acostada en el piso lo que provocó órdenes repetidas de los asaltadores para que no lo hiciera. La presencia de una mujer en el asalto es detalle secundario. Unos testigos, según su posición, o su perspicacia, ven más que otros. El testigo Flores Delgado no vio la mujer, pero tampoco vio al jefe de la banda Peterson Pietersz. E.N.P. págs. 25, 28.

Cuestionando la credibilidad que ya adjudicaron el juez y el jurado, los apelantes sugieren que una de las cajeras, Gladys Fontánez no estaba ese día en el Burger King porque unas nóminas (de la oficina central) demostraban que no trabajó ese día. Este punto fue trillado hasta la saciedad en el juicio. El mismo día del asalto el agente Ramos del N.I.C. entrevistó a Gladys en el Burger King. E.N.P. págs. 56–63; el empleado Francisco Medina declaró que había pedido a Gladys que le trabajara el *lunes* 29 de marzo de 1976 que él lo necesitaba libre y ella accedió al cambio de día libre. E.N.P. págs. 81–82.

Insistiendo en invadir el campo de credibilidad del jurado con una contraposición de hechos probados, los acusados impugnan al testigo Flores Delgado porque dijo le apuntaban con un revólver y Gladys declaró que tenían un rifle largo. Veamos la E.N.P. pág. 22: Declara Flores Delgado (chófer guardián de Wells Fargo) que el acusado Morales Santana le apuntó con una escopeta recortada con culata; y que el acusado Tavárez le apuntó con un revólver color negro. La testigo Gladys Fontánez "ve al acusado Tavárez que estaba de pie con un rifle largo, no está segura del arma ya que no sabe mucho de esto. Según ella el arma era un cañón largo y culata brown . . . ." E.N.P. pág. 3.

En su intervención con la credibilidad de los testigos, los apelantes dejan a un lado el testimonio de Alicia Rosa Colón que por sí solo sostiene la convicción de Peterson Pietersz.

■ El Tribunal Supremo de los Estados Unidos en lo que ya constituye doctrina firme asentada en reiterados pronunciamientos de su jurisprudencia, ha descartado la sugestión o insinuación como elemento que por sí solo ofende el debido proceso de ley y obliga a la exclusión de prueba de identificación. *Simmons* v. *United States*, 390 U.S. 377 (1968) ; *Foster* v. *California,* 394 U.S. 440 (1969) ; *Coleman* v. *Alabama,* 399 U.S. 1 (1970). La norma vigente hace depender la confiabilidad de la identificación de la "totalidad de las circunstancias", aun cuando el procedimiento de confrontación haya sido sugestivo. Se señalan como factores principales que deben guiar la posibilidad de un error de identificación la oportunidad que tuvo el testigo de observar al ofensor al tiempo en que cometía el crimen, el grado de atención del testigo, la corrección de la descripción previa del criminal por el testigo, el nivel de certeza demostrado por el testigo en la confrontación, y el tiempo transcurrido entre el crimen y la confrontación. *Neil* v. *Biggers,* 409 U.S. 188, 199 (1972). La admisión de testimonio relativo a un procedimiento sugestivo e innecesario de identificación, no viola el debido proceso siempre y cuando la identificación tenga suficientes elementos de confiabilidad. *Manson* v. *Brathwaite,* 432 U.S. 98 (1977), supra. La decisión en *Moore* v. *Illinois,* 434 U.S. 220 (1977) excluye la prueba de identificación porque se obtuvo ya iniciado el proceso criminal adversativo, sin que el acusado estuviera asistido de abogado, situación que no confrontamos en el presente caso.

■ La inflexibilidad en la regla de exclusión que impide automáticamente que llegue al jurado prueba confiable y relevante por estar mezclada con aspectos sugestivos, frustra en vez de fomentar la justicia. La confiabilidad resultante de una apreciación de la totalidad de las circunstancias es la clave en la determinación de admisibilidad de la prueba de identificación y los factores a considerar a tal efecto son los dichos en *Biggers,* supra. *Manson* v. *Brathwaite,* supra. La

presencia de sugestión no excluye irremisiblemente la prueba, sino que impone al jurado o al juez constituido en tribunal de derecho la labor de separar campos en el testimonio para determinar su confiabilidad y la existencia de prueba de identificación no influida ni maculada por conducta sugestiva. La conclusión del juzgador de hechos sobre este punto tiene todo el respeto y validez que en apelación se extiende a las determinaciones de hecho. *Pueblo* v. *Suárez Sánchez*, 103 D.P.R. 10, 19, 21–22 (1974). (En reconsideración.)

En *Brathwaite*, supra, se sostuvo la identificación, a pesar del efecto altamente sugestivo de una sola fotografía entregada al agente, quien no conocía al acusado, lo vio por primera vez la tarde que fue a un apartamento de un tercer piso y le compró drogas a través de una puerta entreabierta de 12 a 18 pulgadas que se cerró cuando el agente le dio $20 y volvió a abrirse brevemente para entregar la mercancía, habiendo transcurrido de cinco a seis minutos desde que la puerta se abrió por primera vez hasta que fue cerrada la segunda vez.

Resume el Tribunal Supremo de los Estados Unidos su posición en *Brathwaite*, ante, así:

"De todos modos no podemos decir que bajo todas las circunstancias[4] de este caso exista 'una substancial probabilidad de error irreparable en la identificación'. [*Simmons* v. *United States*, 390 U.S. a la pág. 384, 19 L.Ed.2d 1247.] Hasta ese punto, tal evidencia debe ser considerada por el jurado. Nos satisface poder depender del buen sentido y juicio de los jurados americanos, toda vez que prueba con algún elemento indigno de confianza es grano de todos los días para el molino del jurado. Los jurados no son tan susceptibles que no puedan evaluar inteligentemente el peso de un testimonio de identificación que tiene algún aspecto cuestionable."

---

(4) Contrario al caso que nos ocupa, en *Brathwaite*, supra, el Estado contaba con el agente como su único testigo, éste identificó al acusado a través de una sola fotografía tomada de los archivos de la Policía y no hubo línea de sospechosos. La identificación fue sostenida como confiable.

Tres años antes este Tribunal Supremo había llegado a criterio análogo cuando en *Pueblo* v. *Suárez Sánchez*, supra, dijimos:

"[9-10] El juez de instancia concluyó que en la suma de circunstancias de este caso es confiable y digna de crédito la identificación del acusado, por lo que resultaba de todo punto innecesario recurrir a la rueda de detenidos. Su apreciación sostenida por la prueba ha de ser estimada por este Tribunal. La identificación de criminales no está exenta de la sabia norma que detiene y restrinje la intervención de los tribunales de apelación frente a la mejor posición del juez de instancia para adjudicar credibilidad debiendo suplantar sus determinaciones únicamente cuando no estén sostenidas por la prueba. En la aplicación de ese principio no se puede depender de matices, tonalidades y esmeros y sí de la realidad esencial, del signo conocible que en el proceso racional conduce al juez de instancia a la determinación que satisface su conciencia de juzgador de otro hombre.

Con la misma energía que hemos despejado de obstáculos procesales el juicio pleno a que tiene derecho todo acusado, rechazamos la extremada elaboración académica de principios de derecho sobre el filo de la incidencia criminal que tiene a nuestro pueblo agobiado en angustioso clamor por un sistema de justicia que también proteja su derecho a la libertad, a la vida y a la propiedad."

■ El jurado que aquilató la prueba de identificación contra los aquí apelantes no se vio precisado, para determinar confiabilidad mediante la evaluación integral de circunstancias, a separar factores de sugestión corruptora contrapuestos a los indicadores de habilidad en los testigos para excluir la posibilidad de error y hacer una identificación confiable. Aquí la prueba de identificación no estaba matizada en parte alguna por violación del debido proceso; cinco testigos presenciales del asalto aportaron evidencia directa de identificación, les fueron mostradas numerosas fotografías juntas unas con las otras y se utilizó la rueda de detenidos. ([5])

---

([5]) El impacto abrumador de esta prueba quizás explica por qué la Sociedad para Asistencia Legal, que no intervino en el juicio pero sí tomó

Analicemos la prueba de identificación aplicando los indicadores de suficiencia y confiabilidad de *Biggers* y *Brathwaite*, supra.

1. Oportunidad de observar.—El asalto tuvo lugar a las 5:00 P.M., en la claridad de la tarde. Poco antes, la empleada Alicia Rosa Colón tomó y sirvió al apelante Peterson Pietersz y a su compañero una orden de comestibles ligeros y café. Gladys Fontánez, tirada en el piso por orden de los asaltantes, levantaba la cabeza y miraba, Santos Romero trabajaba en el camión de Wells Fargo y vio los apelantes de cerca, al punto que uno le quitó su revólver. Eduardo Quiñones, el gerente, puso el dinero en las bolsas por orden de Peterson Pietersz mientras tenía a éste al frente. Durante la operación los testigos estuvieron en la inmediata proximidad de los acusados, en buenas condiciones de visibilidad. Ninguno de los acusados usaba máscara ni disfraz. El tiempo de observación fue de media hora que concedió gran amplitud para apreciación de fisonomías y características.

2. Grado de atención.—Ninguno de los testigos se tornó histérico. Santos Romero tiene tres años de Colegio y estuvo en la Guardia Nacional; notó el acento dominicano de los acusados. Alicia Rosa Colón vio a Peterson con y sin boina. Ella y Gladys Fontánez eran cajeras del Burger King, labor que requiere un apreciable grado de concentración en personas y cuentas. Igual o mayor capacidad es de esperarse del gerente Quiñones.

3. Fidelidad de la descripción.—Los testigos suministraron a la Policía detalles sobre la apariencia física, atuendo y armas que portaban los acusados y de su acento dominicano, minutos después de ocurrido el asalto. Dos de ellos prepararon bocetos de los acusados para el F.B.I.

---

el caso en apelación busca apoyo hasta en la opinión disidente de *Pueblo* v. *Toledo Barbosa*, 105 D.P.R. 290 (1976), pero omite toda mención de *Pueblo* v. *Suárez Sánchez*, supra.

4. Nivel de certeza.—La credibilidad y confiabilidad de los testigos es irreprochable. Desde el mismo día del suceso la Policía les mostró cientos de retratos en los que no identificaron a ninguno de los acusados. Su integridad pasó la prueba porque los acusados no habían sido fichados por la Policía a la fecha del asalto al Burger King. Cuando fueron arrestados, los testigos no tuvieron dificultad en señalar su imagen entre otros retratos, ni en señalarlos en la rueda de detenidos.

5. Tiempo entre crimen y confrontación.—Entre el asalto que tuvo lugar el 29 marzo, 1976 y la confrontación en línea de detenidos efectuada el 27 de abril siguiente no transcurrió un mes.

No hubo error en el juicio seguido a los apelantes. La prueba de identificación no fue enervada por sugestión, y es digna de la credibilidad y confiabilidad que le extendió el jurado. *Confirmadas.*

El Juez Asociado Señor Dávila emitió opinión disidente a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

—O—

Opinión disidente emitida por el Juez Asociado Señor Dávila a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 10 de mayo de 1978

Los apelantes fueron convictos en juicio por jurado de robo e infracciones a los Arts. 8 y 8A de la Ley de Armas. Los hechos por los cuales se les acusó ocurrieron el día 29 de marzo de 1976 en el Burger King de San Patricio Plaza cuando se asaltó dicho establecimiento y al conductor y a un guardián de la Wells Fargo que entraba al Burger King en busca de la remesa del día.

El mismo día del asalto se les mostraron varias fotografías a los empleados de Burger King y de la Wells Fargo envueltos en el asalto. No lograron identificar a los asaltantés. El 26 de abril los apelantes fueron arrestados por otros delitos. La policía los consideró sospechosos del asalto del Burger King. Al día siguiente de ser arrestados se les tomaron fotografías. Junto a las de otras personas, esas fotografías fueron mostradas a los empleados del Burger King en el mismo negocio. Se les informó que los sospechosos eran dominicanos. Luego fueron conducidos al cuartel para la celebración de una rueda de detenidos. Las acusaciones fueron radicadas a las 9:00 P.M. del 27 de abril.

Como el conductor guardián de la Wells Fargo no pudo asistir a la rueda de detenidos del 27 de abril, se celebró una segunda rueda el 4 de mayo. Al igual que se hizo con los otros testigos, se le mostraron fotos de sospechosos incluyendo a los apelantes y fotografías de la anterior rueda de detenidos.

Es pertinente constar que desde que los apelantes fueron detenidos solicitaron la asistencia del Lic. E. Belén Trujillo, pero la policía no les permitió comunicarse con éste. Durante la segunda rueda de detenidos estuvieron representados por el Lic. Orlando J. Muñiz.

En su recurso de apelación los apelantes plantean la falta de confiabilidad de la identificación.([1]) Sostienen que no

---

[1] Así reza dicho error:

"2. A. Se llevó a efecto un procedimiento de identificación mediante el uso de fotografías en el cual se violaron todas las disposiciones establecidas en la Regla 252.2 de Procedimiento Criminal, constituyendo tal actuación una violación al debido proceso de ley.

"B. Se llevó a efecto un procedimiento de identificación mediante rueda de detenidos en el cual se violaron todas las disposiciones establecidas en la Regla 252.1 de Procedimiento Criminal, constituyendo tal actuación una violación al debido proceso de ley, así como una violación al Artículo II, Sección 11 de la Constitución al negárseles el derecho a estar asistidos por un abogado durante el procedimiento."

tuvieron representación legal, (²) como la garantiza la Sexta Enmienda de la Constitución Federal, la Sec. 11 del Art. II de la Carta de Derechos de la Constitución del E.L.A. y el caso de *United States* v. *Wade*, 388 U.S. 218 (1967), una vez fueron detenidos y que la evidencia relacionada con la identificación es inadmisible ya que todo el proceso de identificación estuvo saturado de sugestividad. (³)

Desafortunadamente una vez más nos topamos con situaciones en las cuales los agentes del orden público se apartan de las normas sobre identificación establecidas desde *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969) y que han sido plasmadas en la Regla 252 de Procedimiento Criminal.

La identificación del imputado ". . . con anterioridad o posterioridad a la acusación, es ciertamente una de las etapas más críticas de todo proceso criminal". *Pagán Hérnández* v. *Alcaide*, 102 D.P.R. 101, 112 (1974) ; *United States* v. *Wade*, 388 U.S. 218 (1967). Es en ese momento anterior al juicio en que se determina la suerte que posteriormente correrá el sospechoso. Una vez el testigo señala a una persona como autora del hecho delictivo no se retracta. Como expresamos en *Gómez Incera* a la pág. 254, citando de Williams & Hammelmann *Identification Parade*, " 'La experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se retracte más tarde, de tal manera que en la práctica la controversia de la identificación puede (en la ausencia de otra evidencia relevante) para todos los pro-

---

(²) Con referencia al apuntamiento de los apelantes respecto al derecho de asistencia de abogado, debido al alto grado de sugestividad de la identificación objeto de este caso, resulta inmaterial que entremos a discutirlo. Basta señalar que su derecho a asistencia de abogado fue violado dada las circunstancias de perjuicio sustancial en que se vieron envueltos los apelantes en la etapa anterior a la acusación. Tan patente era la necesidad de un abogado, que solicitaron comunicarse con uno.

(³) Los apelantes apuntan en su primer error que no se les hicieron las advertencias requeridas por *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), pero como no se ha tratado de presentar en evidencia confesión alguna relacionada con este caso, huelga considerarlo.

pósitos prácticos ser determinada en ese momento, antes del juicio . . . .' " Ver *Moore* v. *Illinois*, No. 76-5344, decidido por el Tribunal Supremo Federal el 12 de diciembre de 1977 (*Slip Opinion*).

Expresamos en *Gómez Incera*, supra, a la pág. 251, "que en algunos casos los procedimientos que llevan a una identificación ocular pueden estar tan viciados que como cuestión de derecho hagan constitucionalmente inadmisible la identificación." Así, una confrontación entre el sospechoso y el testigo en una rueda de detenidos permeada de sugestividad viola el debido proceso de ley que protege al identificado, provocando la inadmisibilidad de dicha identificación. *Pueblo* v. *Montañez Ramos*, 100 D.P.R. 911 (1972). No obstante, hemos consignado que la determinación de si se ha violado el debido proceso depende de la totalidad de las circunstancias presentes en cada caso. *Pagán Hernández*, supra, pág. 111; *Pueblo* v. *Morales Romero*, 100 D.P.R. 436 (1972); *Stovall* v. *Denno*, 388 U.S. 293 (1967).

Recientemente en *Moore* v. *Illinois*, supra, el Tribunal Supremo de los Estados Unidos reiteró el principio que enunciáramos en *Gómez Incera*, supra. Expresa que ". . . el debido proceso de ley protege al acusado de la admisión de evidencia viciada por una identificación anterior al juicio poco confiable obtenida a través de procedimientos innecesariamente sugestivos." Este mismo caso reafirmó el derecho del acusado a estar asistido de abogado durante el procedimiento de identificación.

Una identificación mediante rueda de detenidos que esté preñada de sugerencias y sugestiones produce una identificación viciada, la cual viola el debido proceso de ley. *Moore* v. *Illinois*, supra, *Manson* v. *Brathwaite*, 432 U.S. 98 (1977); *Kirby* v. *Illinois*, 406 U.S. 682 (1972); *Stovall* v. *Denno*, supra. La sugestividad, ya sea intencional o no, de parte de las personas que conducen el procedimiento de identificación reflejan su deseo de que el testigo identifique al acusado. Tal

sugerencia directa o indirecta podría influir en el ánimo del testigo y éste realizar una identificación errónea. *United States* v. *Wade*, supra, citado en *Moore*, supra. Así, la suerte del acusado quedará sellada.

La identificación mediante fotografías constituye un medio de identificación de uso limitado puesto que se utilizará cuando no sea posible celebrar una rueda de detenidos, Regla 252.2 de Procedimiento Criminal, *Pagán Hernández*, supra, *Moore*, supra. Resulta ser un método menos confiable que la rueda de detenidos por ser más susceptible al error. *Pueblo* v. *Rosso Vázquez*, 105 D.P.R. 905 (1977). El acusado no tiene derecho a asistencia de abogado en este tipo de identificación, *Pueblo* v. *Morales Romero*, supra, *United States* v. *Ash*, 413 U.S. 300 (1973), pero si se demuestra que la identificación no es confiable por haber sido sugerida, el debido proceso de ley impediría su admisión en evidencia. Como regla general este error no podrá ser subsanado mediante la celebración de una rueda de detenidos posterior. *Pagán Hernández*, supra, pág. 112.

Los hechos del caso demuestran palmariamente graves deficiencias en la identificación de los apelantes tanto mediante fotografías como por rueda de detenidos. Dicha identificación no fue confiable puesto que estuvo saturada de sugestividad, violando en forma patente las normas consignadas en nuestros dictámenes y en la Regla 252 de Procedimiento Criminal.(⁴) Los testigos fueron innecesariamente influidos por la actuación de la policía de tal forma que éstos no podían razonablemente hacer una identificación confiable.

---

(4) Dispone la Regla 252 de Procedimiento Criminal en su totalidad:

"REGLA 252. REGLAS PARA LA IDENTIFICACION ANTERIOR AL JUICIO

252.1. Reglas a seguirse al efectuarse una rueda de detenidos

(a) Aplicabilidad. Las reglas que se establecen a continuación deberán seguirse siempre que algún funcionario del orden público someta a un sospechoso a una rueda de detenidos (*lineup*) con el propósito de identificar el posible autor de un acto delictivo.

(b) Asistencia de abogado. Si al momento de celebrarse la rueda de

Todas las fotos mostradas a los testigos tenían el nombre y la dirección de la persona retratada excepto las de los apelantes. Dentro del primer grupo había fotos de personas físicamente disímiles a los apelantes al igual que un grupo de varias fotografías de mujeres.

De los apelantes se incluyeron varias fotos mientras que de los otros sospechosos se incluyó una sola. Del apelante Peterson Pietersz, por ejemplo, se incluyeron fotos en diferentes poses—con y sin gafas. Cuando los testigos vieron las fotos estaban todos juntos, dando esto margen a que unos testigos mediante comentarios y gestos influyeran a los otros. El testigo Francisco Flores rechazaba la foto de Peterson por-

---

detenidos (*lineup*) ya se hubiese radicado denuncia o acusación contra la persona que motiva el procedimiento, ésta tendrá derecho a que su abogado se encuentre presente mientras se efectúa la misma y a esos efectos se le advertirá con suficiente antelación a la celebración de la rueda.

La persona podrá renunciar a su derecho a asistencia legal durante la rueda de detenidos mediante una renuncia escrita ante dos testigos quienes también deberán firmar dicha renuncia.

En caso de que el sospechoso interesase que su abogado se encontrase presente y así lo manifestara, se notificará al abogado que éste señale con razonable anticipación a la celebración de la rueda. De tratarse de una persona insolvente o si su abogado no compareciese, se le proveerá asistencia legal al efecto.

(c) Participación del abogado del sospechoso en la rueda de detenidos. La participación del abogado del sospechoso en la rueda de detenidos se regirá por las siguientes reglas:

(1) Se le permitirá al abogado del sospechoso presenciar el proceso completo de la rueda de detenidos.

(2) Se le permitirá durante la celebración de la rueda de detenidos que escuche cualquier conversación entre los testigos y la Policía.

(3) No se le permitirá interrogar a ningún testigo durante la rueda de detenidos.

(4) El abogado podrá indicar al oficial o funcionario encargado de la rueda de detenidos cualquier infracción a estas reglas y si el primero entendiese que dicha infracción se está cometiendo, corregirá la misma.

(d) Composición de la rueda de detenidos. La rueda de detenidos se compondrá de un número no menor de cuatro (4) personas en adición al sospechoso y la misma estará sujeta a las siguientes condiciones:

(1) Los integrantes de la rueda de detenidos tendrán apariencia física similar a la del sospechoso respecto a sexo, color, raza y, hasta donde

que no creía reconocerlo y el agente de la policía en velada sugestividad, volvía a dársela. Tampoco se levantó acta de dicha identificación fotográfica como lo estatuye la regla.

En cuanto a la identificación por rueda de detenidos es evidente que ésta también estuvo plagada de sugestividad. El testigo Angel Santos Romero sabía antes de la rueda del 27 de abril que los sospechosos eran dominicanos porque un policía se lo había comunicado. Cuando los apelantes iban a ser llevados a la rueda de detenidos uno de los agentes del orden público expresó a los testigos que pasaban cerca de los acusasados que ésos eran los sospechosos que habían arrestado. Antes de la celebración de las dos ruedas de detenidos los testigos vieron de entre varias fotos las de los apelantes y lue-

---

sea posible, su estatura, edad, peso y vestimenta deben guardar relación con las del sospechoso.

(2) En ningún caso habrá más de un sospechoso en cada rueda de detenidos.

(3) No se permitirán indicios visibles que de manera ostensible señalen la persona dentro de la rueda que es el sospechoso o detenido.

(e) Procedimientos en la rueda de detenidos. El procedimiento durante la rueda de detenidos se llevará a cabo de acuerdo a las siguientes reglas:

(1) No se permitirá que los testigos vean al sospechoso ni a los demás integrantes de la rueda de detenidos con anterioridad a la celebración de la rueda de detenidos.

(2) No se le informará a los testigos antes de la celebración de la rueda que se tiene detenido a un sospechoso.

(3) No se le dará ninguna información sobre los componentes de la rueda.

(4) Si dos o más testigos fueran a participar como identificantes no se permitirá que se comuniquen entre sí antes o durante la identificación y cada uno hará la identificación por separado.

(5) El testigo observará la rueda y con la menor intervención de los agentes o funcionarios de orden público, identificará de manera positiva al autor de los hechos delictivos si éste se encuentra en la rueda.

(6) Si el sospechoso es requerido para que diga alguna frase, haga algún movimiento o vista algún atavío, se requerirá de los demás integrantes expresión, actuación o vestimenta de forma parecida.

(7) En ningún caso se le sugerirá al testigo la persona que debe seleccionar, ya sea expresamente o de cualquier otra forma.

(f) Récord de los procedimientos. En todo procedimiento efectuado de

go los vieron en la rueda de detenidos, evidenciando una sutil manera de señalar a los supuestos culpables del asalto al Burger King. Las personas que comparecieron a las ruedas de detenidos no eran de similares características físicas a los acusados. Esto resulta ser más patente en el caso del apelante Peterson.

Resulta también de dudosa confiabilidad la identificación que hicieran los testigos de los apelantes en la rueda de dete-

acuerdo a estas reglas se levantará una breve acta la cual será preparada por el encargado de la rueda.

En dicha acta se incluirá el nombre de los integrantes de la rueda, nombres de otras personas presentes y un resumen suscinto de los procedimientos observados.

Deberá además tomarse cuantas veces fuere necesario para su claridad una fotografía de la rueda tal y como le fue presentada a los testigos. Dicha foto, al igual que el acta levantada, formará parte del expediente policíaco o fiscal correspondiente y su obtención por un acusado se regirá por las reglas de procedimiento criminal vigentes.

252.2. Utilización de fotografías como procedimiento de identificación

(a) Los agentes y funcionarios del orden público podrán hacer uso de fotografías para identificar el posible autor de un acto delictivo únicamente en las siguientes circunstancias:

(1) Cuando por razones fuera del control de los agentes o funcionarios del orden público no fuere posible o necesario realizar una rueda de detenidos.

(2) Cuando no exista sospechoso del acto delictivo.

(3) Cuando existiendo un sospechoso éste se negare a participar en la rueda, o su actuación o ausencia impidiese que la misma se efectúe adecuadamente.

(b) La utilización de fotografías como medio de identificación se regirá por las siguientes reglas:

(1) Se le mostrarán al testigo no menos de nueve (9) fotografías incluyendo la del sospechoso y éstas presentarán, en adición al sospechoso, personas de rasgos similares a éste.

(2) Si dos o más testigos fueran a hacer la identificación fotográfica cada uno hará la identificación por separado.

(3) En ningún caso se le sugerirá al testigo la persona que debe seleccionar, mediante la forma de llevar a cabo el procedimiento, por marcas en las fotografías, o cualquier otro medio.

(4) Celebrada la identificación fotográfica si el testigo identificara el autor de los hechos delictivos, se procederá a levantar un acta que resuma brevemente el procedimiento seguido y se identificarán las fotografías utilizadas de manera que posteriormente pueda establecerse cuáles fueron las fotografías presentadas al testigo."

nidos. Si los presuntos asaltantes los obligaron a esconder la cabeza entre los brazos, ¿cómo es que la testigo Gladys Fontánez Marcano los pudo observar suficientemente como para poderlos identificar casi un mes después?[5] Tal identificación se torna menos confiable aún, cuando la testigo declara que estaba envuelta en el asalto una mujer "blanca, mujer fina, muy educada" que "tenía sweater con muñequitos de esos bonitos que le gustan a los nenes" y ninguno de los otros testigos empleados del Burger King y de la Wells Fargo hicieron referencia a la presencia de esta mujer. También, se impugnó la credibilidad de la testigo Gladys Fontánez mediante evidencia documental (nóminas) demostrativa de que ella no trabajó ese día.

Franciso Flores Delgado declaró en el juicio que el apelante Tavárez le apuntó con un revólver, mientras que Gladys Fontánez declaró que lo vio con un rifle largo. La diferencia entre ambas armas es obvia y si el testigo no sabía con cuál se le estaba apuntando, es de dudosa certeza que pudiese identificar al apelante Tavárez.

Sorprende el dictamen de hoy a la luz de nuestras decisiones comenzando con *Pueblo* v. *Gómez Incera*, supra y del reciente caso de *Moore* v. *Illinois*, supra, del Tribunal Supremo de los Estados Unidos resuelto por unanimidad el 12 de diciembre de 1977 donde se revoca la sentencia por no ser confiable la identificación al no estar el acusado representado por abogado y donde se reiteran las decisiones de *United States* v. *Wade*, supra; *Gilbert* v. *California*, 388 U.S. 263 (1967) y *Kirby* v. *Illinois*, supra.

La víctima de una violación vivía en un apartamiento en el Sur de Chicago. Poco después del mediodía del 14 de diciembre del año 1967, al despertar de una siesta vio a un hombre parado en el umbral de la puerta del cuarto con un

---

[5] Según el testigo Angel Santos Romero: "Ni alzando la cabeza se podía ver."

cuchillo. El hombre entró a la habitación, la tiró boca abajo en la cama y la agarró hasta que se quedó quieta. Luego de cubrirle la cara el intruso desvistió a la víctima y la violó. Se marchó llevándose una guitarra y una flauta. Cuando la policía llegó la víctima le dio una descripción del asaltante. A pesar de no conocerlo de antemano, y de sólo haberlo visto por un instante cuando la atacó, tenía la idea de que era el mismo sujeto que le había hecho insinuaciones ofensivas en un bar cercano la noche anterior. Ella le entregó a la policía una libreta que encontró cerca de la cama luego de que el hombre se marchó.

Durante la primera semana la policía mostró a la víctima dos grupos de fotografías de hombres. Del primer grupo de 200 ella seleccionó como 30 que se le parecían al asaltante en cuanto a estatura, peso y contextura. Del segundo grupo de 10 fotos escogió dos o tres. Una de éstas era la del peticionario. La policía encontró una carta en la libreta que la víctima le había entregado. Una investigación demostró que dicha carta pertenecía a una mujer con la cual el peticionario tenía relaciones. La carta fue sustraída de la casa de esta mujer en su ausencia y aparentemente la única persona que tenía acceso a esta casa era el peticionario.

En la noche del 20 de diciembre de 1967 la policía arrestó al peticionario. Al otro día un policía acompañó a la víctima a la Corte Municipal para una vista. El policía le informó que le iban a mostrar un sospechoso para que lo identificara si podía. El policía hizo que ella firmara una denuncia en la cual señalaba al peticionario como la persona que la violó. En la vista el nombre del peticionario fue llamado y lo condujeron frente al estrado. El juez le informó que estaba acusado de violación y otro delito relacionado. El juez llamó a la víctima, que estaba esperando en el salón para que se acercara al estrado. El fiscal informó que la policía tenía prueba que conectaba al peticionario con los delitos imputados. El juez preguntó a la víctima que si veía a su asaltante en corte.

Ella señaló al peticionario. El peticionario no estuvo representado por abogado y el tribunal no le ofreció asistencia legal.

En una vista posterior ante el Gran Jurado se le acusó de violación, escalamiento y robo. Se le nombró abogado y éste solicitó se eliminara la identificación del peticionario, por haber sido innecesariamente sugestivo el procedimiento utilizado y por no estar asistido de abogado. El abogado invocó el caso de *Wade* recientemente resuelto. El tribunal denegó la moción.

El procedimiento de identificación en el caso resuelto en el día de hoy adolece de los mismos defectos del que estuvo ante el Tribunal Supremo en el caso de *Moore*. El procedimiento en uno y otro caso fue igual de sugestivo y los dos acusados carecieron de ayuda legal. En el caso de *Moore* había dos elementos que conectaban al acusado con los hechos imputados: la carta encontrada al lado de la cama de la víctima perteneciente a una mujer que estaba relacionada con el acusado, así como el hecho de que ésta declaró que lo vio en un bar de la vecindad la noche anterior a los hechos. A pesar de esa circunstancia se revocó la sentencia. Para mí es incomprensible el dictamen emitido en el día de hoy. Es por eso que disiento.