Colón Birriel, Juez Ponente
*637 TEXTO COMPLETO DE LA SENTENCIA
El apelante Luis Rodríguez Alicea (en adelante "Rodríguez Alicea"), quien fue declarado culpable y convicto luego de un juicio celebrado por tribunal de derecho en el Tribunal de Primera Instancia, Sala Superior de Caguas, nos solicita la revocación de las sentencias que le fueron impuestas el 16 de abril de 1999. Se le condenó a cumplir noventa y nueve (99) años de reclusión por el delito de Asesinato en Primer Grado; cinco (5) años de reclusión por el delito de Tentativa de Asesinato; tres (3) y cinco (5) años de reclusión, respectivamente, por infracciones a los Artículos 6 y 8 de la Ley de Armas, y seis (6) años de reclusión por el delito de Tentativa de Robo. Las sentencias serían cumplidas concurrentemente entre sí. Procedemos, pues, a exponer el trasfondo fáctico y procesal que generó el recurso ante nuestra consideración, según se desprende de la exposición narrativa de la prueba, de los escritos de las partes, de los autos originales y de la voluminosa prueba admitida en evidencia.
II
Como consecuencia de unos hechos ocurridos el 3 de febrero de 1997, a las 10:45 a.m., en el .municipio de Caguas, el 6 de febrero de 1997, el Ministerio Público (Fiscalía de Caguas), por conducto de la Fiscal, Leda. Sol de Borinquen Cintrón Cintrón, sometió, en ausencia, varias denuncias contra Rodríguez Alicea y Fidel Cruz Carrasquillo, ante la consideración de un magistrado, a los fines de la determinación de causa probable para arresto. Se les imputó, que actuando en concierto y de común acuerdo con otras personas, cometieron los delitos de Asesinato en Primer Grado (Felony Murder), Tentativa de Asesinato, Infracciones a los Artículos 6 y 8 de la Ley de Armas y Tentativa de Robo. Posteriormente, se determinó causa probable ordenándose el arresto, en ausencia de los acusados, fijándoles una fianza de $60,000.00. Rodríguez Alicea fue arrestado y llevado ante la presencia de un magistrado el 7 de febrero de dicho año, a los fines del diligenciamiento de la orden de arresto en su contra. Regla 22 (c) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Celebrada la Conferencia con Antelación a la Vista Preliminar, se señaló la Vista Preliminar para el 21 de febrero de 1997, la que posteriormente fue pautada para el 4 de marzo de 1997, a petición del abogado de Rodríguez Alicea, Ledo. Carlos Vicky Morell. Tras otros incidentes, el 10 de junio de 1997, se celebró la vista preliminar en cumplimiento de las disposiciones de la Regla 23 de las de Procedimiento Criminal, supra, determinándose causa probable para acusar por los delitos imputados. El juicio en su fondo fue señalado para el 2 de septiembre de 1997.
Antes del juicio, el 7 de agosto de 1997, se presentó una solicitud para la supresión de cierta evidencia que el Ministerio Público se proponía presentar en el juicio, solicitud que, para la fecha del juicio en su fondo, no había sido considerada, por lo que se reseñaló el juicio; para el 3 de noviembre de 1997. En tal ocasión, uno de los testigos esenciales del caso se encontraba convaleciendo de un accidente automovilístico, por lo que, solicitada la posposición del caso, se pautó el juicio para el 16 de diciembre de 1997.
En el ínterin, el 18 de septiembre de 1997, el Ministerio Público se opuso a la supresión de la evidencia solicitada por Rodríguez Alicea. La vista, a tales efectos, fue señalada para el 10 de diciembre de 1997 y, posteriormente, para el día del juicio en su fondo, 16 de diciembre de 1997. En dicha fecha, el tribunal reseñaló la vista de supresión para el 27 de enero de 1998, considerando que Rodríguez Alicea había renunciado a los *638 términos de juicio rápido correspondientes. Consecuentemente, el juicio en su fondo fue puesto en calendario para el 10 de marzo de 1998.
El 27 de enero de 1998, el tribunal accedió a trasladar la vista de supresión para el 6 de febrero de dicho año, por entender que en ese día iba a ser imposible escuchar toda la prueba, la que entendían debía desfilar en un mismo día. Sin embargo, pese al intento, fue imposible desfilar en dicho día toda la prueba objeto de examen, por lo que se continuó la vista de supresión los días 12 y 18 de febrero de 1998. El 10 de marzo de 1998, el tribunal emitió su decisión por escrito, declarando "No Ha Lugar" a la supresión solicitada; determinación que fue notificada posteriormente. Por tal razón, el acto del juicio fue suspendido para el 11 de mayo de 1998. Una vez más, se señaló el acto del juicio para el 1ro. de junio de 1998. Ese día, ante diversos problemas de la prueba y de que la fiscal no se encontraba preparada para presentar el caso, se suspendió el mismo para el 4 de agosto de 1998.
El 4 de agosto de 1998, Rodríguez Alicea renunció a su derecho ajuicio por jurado para que fuera ventilado por tribunal de derecho. Además, uno de los testigos de cargo acababa de ser operado de la vista, razón por la cual se señaló el juicio, nuevamente, para el 15 de septiembre de 1998. En dicha ocasión, se tomó juramento a los testigos, comenzó el desfile de prueba del Ministerio Público y se decretó el receso de los procedimientos hasta el día siguiente. La prueba de cargo consistió de los testimonios de: a) José Torres Flores (Don Cheo), testigo presencial de los hechos; b) José Gómez Homs, testigo presencial de los hechos; c) Agente Ulises Batalla, investigador del caso; d) Angeles Díaz Santana, esposa del occiso, quien identificó el cadáver; e) Dra. Yocasta Brugal, Patóloga Forense, quien practicó la autopsia al occiso; f) Ismael Sierra Concepción, Agente adscrito a la División de Servicios Técnicos de la Policía de Puerto Rico; g) Dra. Juanita Mejías Matos; h) Leyda Rodríguez Vélez, Tecnóloga Médica Forense; i) Oscar Rivera Cruz, técnico del Instituto de Ciencias Forenses; y j) Ernesto J. Barrios, Examinador de Armas de Fuego. Por Rodríguez Alicea prestaron testimonio: a) la Agente María I. Asia de Jesús, quien autenticó el informe de delito redactado por ella el día de los hechos; y b) el Alguacil Edwin Pérez. Como testigo de refutación, se presentó a la Fiscal Lizabeth Lipsett Champagne. El tribunal estuvo evaluando los procedimientos del caso los días 16 y 17 de septiembre; 19, 26 y 27 de octubre de 1998, hasta que, finalmente, el 30 de octubre de 1998 declaró culpable y convicto a Rodríguez Alicea. 
Se desprende de la exposición narrativa de la prueba presentada y de los escritos mencionados, en lo pertinente, que el 3 de febrero de 1997, alrededor de las 10:45 a.m., José Torres Flores (en adelante "Don Cheo") y su hijo Edgardo Torres (en adelante "Edgardo") se encontraban atendiendo el negocio del primero, conocido como Bar Correa, ubicado en el pueblo de San Lorenzo. José Gómez Homs, cliente del negocio, se encontraba frente al local mientras que Edgardo se encontraba en la parte trasera del mismo, picando carne con un cuchillo. Al lugar llegó un automóvil del cual se bajo Rodríguez Alicea, se dirigió al mostrador y le pidió un cigarrillo a Don Cheo. Cuando Don Cheo se disponía a entregarle el cigarrillo, Rodríguez Alicea le agarró la mano, brincó el mostrador y se dirigió al interior del negocio, atacando a Edgardo. Así, pues, otro individuo, armado con una pistola, entró al negocio, hirió a Don Cheo en un brazo y le propinó dos balazos en la frente a Edgardo, lo que le ocasionó la muerte. Posteriormente, Don Cheo logró identificar a Rodríguez Alicea y a su acompañante (Fidel Cruz Carrasquillo, en adelante "Cruz Carrasquillo") mediante fotografías (método supletorio de identificación) proporcionadas por el Agente Ulises Batalla Román (en adelante "Batalla"), oficial encargado de la investigación policíaca que nos ocupa, lo que condujo al arresto de Rodríguez Alicea.
La versión de Don Cheo fue corroborada por el testimonio de Gómez Homs, quien se encontraba en la entrada del negocio el día en que ocurrieron los hechos. Este pudo observar cuando un automóvil marca Hyundai, color verde, ocupado por cuatro (4) individuos, pasó frente al negocio de Don Cheo, bajándose dos (2) de los ocupantes del vehículo. Uno de ellos (Rodríguez Alicea) entró por el lado de los comestibles y el otro individuo (Cruz Carrasquillo) lo encañonó a dos (2) pies de distancia y le ordenó tirarse al suelo. Gómez Homs escuchó un forcejeo dentro del establecimiento y, acto seguido, cuatro (4) detonaciones estando todavía tirado en el piso. Escuchó cuando el vehículo salió a velocidad del sitio de los hechos. Al levantarse del piso y entrar al negocio, observó a Don Cheo herido en su brazo y a su hijo moribundo en el piso, con un disparo en la frente. *639 Tres (3) días más tarde, identificó a Cruz Carrasquillo, asaltante que lo encañonó, de un cartel de fotografías ("line up" fotográfico) que le mostró el Agente Batalla, investigador del caso.
El 12 de noviembre de 1998, el tribunal celebró, además, otro procedimiento criminal, independiente del de marras, el que no está ante nuestra consideración, en contra de Rodríguez Alicea (esta vez por infracción a los Artículos 404 de la Ley de Sustancias Controladas y 258 del Código Penal -resistencia u obstrucción a la autoridad pública) donde el imputado hizo alegación de culpabilidad por los delitos imputados y se recomendó una pena de cinco (5) años, a ser cumplidos concurrentemente con cualquiera otros que fueran dictados. Ello produjo que se fijara el 22 y, posteriormente, el 29 de enero de 1999 para el acto del dictamen de sentencia de todos los procedimientos judiciales seguidos contra Rodríguez Alicea. Sin embargo, no es sino hasta el 16 de abril de 1999 que se produce el mismo, imponiéndole a Rodríguez Alicea las penas de reclusión antes indicadas.
Insatisfecho con la determinación, dentro de los términos aplicables, Rodríguez Alicea presentó su recurso apelativo que hoy es objeto de nuestra atención. Le imputa al foro de instancia la comisión de cuatro (4) errores, los que transcritos literalmente leen como siguen:

"PRIMER ERROR

Erró el Honorable Tribunal al condenar al apelante por los delitos de epígrafe con una prueba insuficiente, contradictoria e increíble en hechos y derecho que no estableció su culpabilidad más allá de duda razonable, errando manifiestamente al aquilatar y apreciar la totalidad de la prueba desfilada.

SEGUNDO ERROR

Erró el Honorable Tribunal al admitir en evidencia prueba documental consistente en fotografías y récord de identificación en las etapas anteriores al juicio sin estas evidencias ser identificadas, ni presentadas al testigo, quien realizó la identificación para su autenticación durante el juicio.

TERCER ERROR

Erró el Honorable Tribunal al admitir prueba de balísticas a través de testigo diferente al que realizó las pruebas de rigor, a pesar de que el experto que las realizó estaba anunciado y disponible para testificar.

CUARTO ERROR

Erró el Honorable Tribunal al admitir prueba física de artículos y/o efectos personales consistentes en zapatos deportivos, pantalones mahones, y una camisa, sin mediar orden de registro y sin éstas ser identificadas enjuicio conforme a derecho."

III
Los primeros dos señalamientos de error serán discutidos simultáneamente por estar relacionados entre sí. Así, pues, el apelante expone que erró el tribunal:

"...al condenar al apelante por los delitos de epígrafe con una prueba insuficiente, contradictoria e increíble en hechos y derecho, que no estableció su culpabilidad más allá de duda razonable, errando manifiestamente al aquilatar y apreciar la totalidad de la prueba desfilada.

...al admitir en evidencia prueba documental consistente en fotografías y récord de identificación en las etapas anteriores al juicio sin estas, evidencias ser identificadas, ni presentadas al testigo, quien realizó la identificación para su autenticación durante el juicio."

*640 Basa su contención en el hecho de la identificación "insuficiente, contradictoria e increíble" que hiciera Don Cheo de Rodríguez Alicea, durante la celebración del juicio en su fondo, y de que el "procedimiento de identificación", llevado a cabo por las autoridades con anterioridad a la radicación de los correspondientes cargos criminales contra él, fue uno sugestivo y poco confiable. Además, que el tribunal no debió admitir la prueba relacionada con dicho procedimiento de identificación, lo que, a su entender, amerita y conlleva la supresión de la identificación y, consecuentemente, la revocación de la sentencia apelada. No le asiste la razón. Veamos.
En el trasfondo fáctico y procesal, previamente relatado, señalamos que, antes del juicio, durante los días 6, 12 y 18 de febrero de 1998, el foro apelado tuvo ante su consideración la controversia que nos ocupa, sobre la identificación y supresión fotográfica de Rodríguez Alicea. A tales efectos, determinó dicho foro que:
"En ausencia de prueba que demuestre o permita razonablemente inferir una persuasión [sic.J irresistible o circunstancias tales que conduzca a la conclusión forzosa de una identificación equivocada, este Tribunal carece de justificación para declarar que la identificación mediante fotografías vulneró el debido proceso de ley. Resolución del foro apelado de 10 de marzo de 1998, a la pág. 2."
El tribunal tuvo la oportunidad de evaluar los testimonios del Agente Ulises Batalla, Don Cheo y Gómez Homs, determinando que no existían razones para suprimir las fotografías utilizadas para la identificación de Rodríguez Alicea. Ciertamente, la Regla 252.2 de las de Procedimiento Criminal dispone, en lo pertinente, que:

"Los agentes y funcionarios del orden público podrán hacer uso de fotografías para identificar el posible autor de un acto delictivo, únicamente en las siguientes circunstancias:

(1) Cuando por razones fuera del control de los agentes o funcionarios del orden público, no fuere posible o necesario realizar una rueda de detenidos."
Conforme a la prueba presentada, el foro apelado reconoció la existencia de razones justificadas ("fuera del control de la policía") para celebrar la rueda de detenidos. El tribunal oyó y adjudicó credibilidad respecto a la prueba presentada a los efectos de que era imposible que Rodríguez Alicea formara parte de una meda de detenidos, debido a su condición de salud, Resolución, supra, a la pág. 2, pues se encontraba en el hospital, en estado crítico; recluido como consecuencia de una herida de arma blanca (cuchillo), en el pecho. Tales hechos nos parecen más que justificados para avalar la determinación del tribunal sobre la imposibilidad de efectuar una rueda de detenidos.
De otro modo, el Tribunal de Primera Instancia tuvo la oportunidad de dirimir aspectos relacionados a la válida y adecuada identificación de Rodríguez Alicea. Acertadamente, indicó dicho foro que "la validez de una identificación depende de la totalidad de las circunstancias que rodean al proceso de identificación." Resolución, supra, a la pág. 2. Pueblo v. Torres Rivera, 137 D.P.R. 630, 637-38 (1994). El tribunal tuvo a bien examinar la posibilidad de error en la identificación conforme a los criterios dispuestos en Pueblo v. Peterson Pietersz, 107 D.P.R. 172, 183 (1978), a saber: (a) la oportunidad que tuvo el testigo de observar al ofensor al tiempo en que cometía el crimen; (b) el grado de atención del testigo; (c) la corrección de la descripción previa del criminal por el testigo; (d) el nivel de certeza demostrado por el testigo en la confrontación; y (e) el tiempo transcurrido entre el crimen y la confrontación.
El crimen se realizó en horas de la mañana (10:00 a 11:00 a.m. ). El negocio estaba alumbrado con luz fluorescente [sic] y tiene cuatro puertas de frente y doce ventanas las cuales estaban abiertas. En conclusión, la iluminación era muy buena como para poder identificar adecuadamente a los acusados.
Los acusados no tenían [sic] máscaras, fueron vistos de frente. Don José Torres vio [sic] a Luis Rodríguez y a Fidel Cruz. A Luis lo tuvo más tiempo que a Fidel, pero a Fidel, aparte de verlo de frente, pudo verlo cuando *641 le dispara a su hijo.

En cuanto a José Gómez Homs,..concurren las mismas circunstancias de iluminación, pudo ver a Fidel Cruz [sic] Carrasquillo (al único que identifica) a dos pies de distancia cuando lo apunta con la pistola.

En cuanto al nivel de certeza en la identificación, no hubo vacilación en señalar a los acusados. Las fotos fueron mostradas tres días después cuando los hechos estaban frescos en sus memorias.

La identificación no fue sugestiva, no se informó que (los agentes) tenían sospechosos. Se le mostraron dos cartones con nueve fotografías en las cuales aparecía respectivamente un acusado. Resolución, supra, a las págs. 6-7.
A tales efectos, se impone la validez de la identificación de Rodríguez Alicea, pues, como tal, la conclusión a que llegara el juzgador de dichos hechos sobre la suficiencia de prueba confiable para la identificación del acusado tiene todo el respeto y validez en esta etapa apelativa, las que se extienden a las determinaciones de hechos del foro apelado. Pueblo v. Peterson Pietersz, supra, a las págs. 183-84. No logra mover nuestra discreción el apelante cuando señala que durante la celebración del juicio en su fondo, Don Cheo "incurrió en serias e insalvables contradicciones y, además, nunca pudo identificar, ni describir de manera clara y convincente a las personas que asaltaron su negocio". Apelación, a la pág. 11. Aun cuando de la exposición narrativa ante nuestra consideración no surgiera una descripción detallada de las características físicas de Rodríguez Alicea, no menos cierto es que, durante la presentación del testimonio de Don Cheo, el Tribunal de Primera Instancia tomó conocimiento judicial sobre lo acontecido en la Vista de Supresión de Evidencia, de que ya hemos hecho mención. En tal oportunidad, el tribunal tuvo ocasión de pasar juicio sobre dicho aspecto, convalidando la identificación del acusado, conclusión que avalamos como Tribunal Apelativo.
Ahora, en apelación, se une un elemento adicional, que la parte apelante entiende justifica la supresión de dicha evidencia. A saber:

"[L]as fotos mostradas a Don Cheo eran diferentes a las demás, tomadas por una cámara Polaroid, con textura diferente, más brillante, y que era la única que se veía más abajo del pecho, y que la razón de porqué era diferente, fue que la misma se tomó en el hospital. Apelación, a las págs. 20-21.

[D]e la forma y manera que se realiza la identificación fuera de corte, hace que la misma sea una contraria a derecho y, por lo tanto, inadmisible, siendo dicha admisibilidad factor decisivo y sustancial en la determinación de culpabilidad del acusado, pese a la oportuna objeción de la defensa." Apelación, a la pág. 21.
Tampoco le asiste la razón al apelante. Sin lugar a dudas, la identificación del acusado es una de las etapas más esenciales o críticas en el procedimiento criminal, por cuanto la admisión en evidencia de prueba viciada sobre identificación puede constituir una violación al debido procedimiento de ley. Pueblo v. Rodríguez Maysonet, 119 D.P.R. 302, 309 (1987). Pero, una vez más, ello depende de la totalidad de las circunstancias presentes en el caso. Pueblo v. Rodríguez Maysonet, supra.
Aun cuando la fotografía para la identificación del acusado pudiera ser considerada como sugestiva, por el hecho de la diferencia existente entre aquélla que identificaba a Rodríguez Alicea con las otras contenidas en los cartones de fotografías, ello por sí sólo no excluye la prueba de identificación del acusado, sino que impuso al juez la labor de determinar su confiabilidad, considerando la totalidad de las circunstancias presentes en el caso. Pueblo v. Mattei Torres, 121 D.P.R. 600, 608 (1988). Cf. Pueblo v. Domínguez Fraguada, 105 D.P.R. 537 (1977) (donde nuestro Tribunal Supremo validó, para propósitos de la identificación de un sospechoso, el uso de la fotografía adherida a la solicitud de licencia para conducir vehículos de motor que aparecía en el correspondiente expediente archivado del entonces Dpto. de Obras Públicas).
*642 En la identificación de un sospechoso, lo importante no es el método que se utilice para la identificación del acusado, sino el hecho de que la identificación haya sido libre, espontánea y confiable. Pueblo v. Rosso Vázquez, 105 D.P.R. 905, 908 (1977). Consecuentemente, "aun cuando la identificación previa, efectuada durante la etapa investigativa, resultare inadmisible", podría validarse la identificación de un acusado realizada durante el acto del juicio. Pueblo v. Torres Rivera, 137 D.P.R. 630, 637-38 (1994). Visto que la sugestión, por sí sola, no tiende necesariamente a ofender el debido proceso de ley, de forma que obligue a la exclusión de la pmeba de identificación del sospechoso, Pueblo v. Peterson Pietersz, supra, a la pág. 183, sostenemos la determinación del foro apelado por entender que la conclusión del juzgador de los hechos fue acertada.
Por otro lado, la Sección 11 del Art. II de nuestra Constitución garantiza el derecho de todo acusado a gozar de la presunción de inocencia. Este derecho requiere que toda convicción criminal esté basada en prueba suficiente con la cual se establezcan todos los elementos del delito y la conexión del acusado con los mismos más allá de duda razonable. Pueblo v. Ortiz Morales, 86 D.P.R. 456, 466 (1962); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985); Pueblo v. Ramos Alvarez, 122 D.P.R. 287, 315-316 (1988). No obstante lo anterior, ello no implica que cualquier duda concebible tenga que ser destruida por el Ministerio Público y que la culpabilidad del acusado tenga que establecerse con certeza matemática. Esta garantía sólo requiere que la prueba establezca la culpabilidad con aquella certeza moral que convenza, dirija la inteligencia y satisfaga la razón del juzgador. Duda razonable es una duda fundada, producida por el análisis y la apreciación racional y ponderada de todos los elementos del juicio que surgen de la prueba presentada en un caso. No es, pues, una duda especulativa o imaginaria basada en unos elementos aislados de otros. Pueblo v. Bigio Pastrana, supra.
Sin embargo, el Ministerio Público no cumple con su responsabilidad de establecer la culpabilidad de un acusado más allá de duda razonable, presentando simplemente prueba sobre todos los elementos del delito imputado. Para establecer la culpabilidad de un acusado más allá de duda razonable, Pueblo v. Pagán Santiago, 130 D.P.R. 470, 480 (1992), la prueba ofrecida por el Ministerio Público tiene que ser "suficiente en derecho". Esto significa que la evidencia presentada tiene que producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Rodríguez Román, 128 D.P.R. 121, 130-131 (1991); Pueblo v. Narváez Narváez, 122 D.P.R. 80, 86 (1988); Pueblo v. Carrasquillo, 102 D.P.R. 545, 552 (1974).
La insatisfacción con la prueba es lo que se conoce como la duda razonable. A esos efectos, nuestro Tribunal Supremo, en Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 (1986), estableció como principio de derecho que:
"El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea ’suficiente', esto es, que 'verse' sobre todos los elementos del delito imputado; se requiere que la misma sea 'suficiente en derecho'. Ello significa que la evidencia presentada 'además de suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación' o en un ánimo no prevenido. (Enfasis suplido.) Pueblo v. Carrasquillo, ante, pág. 552. Esa 'insatisfacción' con la prueba es lo que se conoce como 'duda razonable y fundada'. Pueblo v. Toro Rosas, 89 D.P.R. 169 (1963). ”
A la luz de los anteriores principios, hemos analizado y examinado minuciosa y objetivamente los Exhibits presentados, así como los testimonios de los testigos que declararon en el juicio. De lo anterior se desprende que la prueba presentada por el Ministerio Público y creída por el tribunal, estableció, más allá de duda razonable, que Rodríguez Alicea cometió los delitos imputados por el Estado.
En su tercer señalamiento de error, el apelante expone que: "erró el honorable tribunal al admitir prueba de balísticas a través de testigo diferente al que realizó las pruebas de rigor y a pesar de que el experto que las realizó estaba anunciado y disponible para testificar." Le asiste la razón al apelante.
Conforme al principio general que rige al procedimiento evidenciario, la parte apelada no cumplió con *643 establecer la pertinencia de la prueba que pretendió presentar. Regla 18 de las de Evidencia, 32 L.P.R.A. Ap. IV. Habida cuenta que la prueba del perito en balística no es concluyente para con la convicción que es objeto de nuestra atención y su efecto evidenciario resulta altamente especulativo, entendemos no debió ser admitido, dicha pieza en evidencia. Sin embargo, aun determinado que constituyó error el permitir prueba sobre el análisis balístico, la prueba presentada para sostener la acusación de asesinato es tan decisiva que ello no justificaría la revocación de la sentencia.
En su cuarto y último señalamiento de error* el-apelante expone que el tribunal na debió "admitir prueba física: de artículos y/o efectos personales consistentes en zapatos deportivos, pantalones maltones y una camisa sin mediar orden de registro y sin éstas ser identificadas en juicio conforme a derecho." Alegó a tales efectos, que no medió orden judicial para que el Agente Batalla pudiera incautarse válidamente de los distintos artículos personales de que hemos hecho mención, lo que constituyó un registro irrazonable y una violación al derecho de intimidad que le asistía. No le asiste la razón. La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, Art. n, Sec. 10, dispone, en lo pertinente, que:

"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección, será inadmisible en los tribunales."

Según expusiera el Pueblo de Puerto Rico en su alegato, dicha disposición constitucional tiene "como propósito proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión". Pueblo v. Santiago Feliciano, 139 D.P.R. 361 (1995); Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988). Sin embargo, dicha norma tiene sus excepciones, a saber, cuando: a) ha mediado un consentimiento válido, Pueblo v. Acevedo Escobar, 112 D.P.R. 770 (1982); b) el registro es incidental y contemporáneo a un arresto válido, Pueblo v. Pacheco Báez, 130 D.P.R. 664, 670 (1992); c) se incauta evidencia abandonada o arrojada, Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 144 (1985); d) el registro ocurre en estructura abandonada, Pueblo v. Ramos Santos, 132 D.P.R. 363, 371 (1992); e) cuando se realiza un acto ilegal a plena vista, Pueblo v. Dolce, 105 D.P.R. 422, 436 (1976); f) no existe una expectativa razonable de intimidad, Pueblo v. Lebrón, 108 D.P.R. 324, 332 (1979); g) el registro es de tipo inventario, Pueblo v. Rivera Rivera, 117 D.P.R. 283, apostillas (1986); o h) el registro ocurre como consecuencia de una persecución, Pueblo v. Ríos Colón, 129 D.P.R. 71, 94 (1991).
De hecho, cuando la incautación resulta de un registro y allanamiento sin orden judicial, se presumen irrazonables e inválidos, por lo que corresponde al Ministerio Público rebatir la presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que permitirían actuar sin orden. Pueblo v. Rosa Ramírez, 136 D.P.R. 290 (1994). Conforme surge de la exposición narrativa de la prueba, entendemos que el Ministerio Público cumplió con su deber.
A la luz de las circunstancias particulares del recurso que nos ocupa, entendemos no era necesario solicitar una orden judicial previa a la incautación, toda vez que Rodríguez Alicea no albergaba, en el lugar de la incautación, ninguna expectativa razonable de intimidad, a los fines de activar la protección constitucional contra registros irrazonables. De un lado, el Agente Batalla, en el ejercicio legal de su función investigativa, se presentó al Hospital Regional de Caguas, lugar donde Rodríguez Alicea había acudido en aras de obtener la atención médica necesitada, como consecuencia de una herida sufrida con un arma blanca. Exposición Narrativa de la Pmeba, a la pág. 8. De otro modo, al acudir voluntariamente a una institución hospitalaria para ser *644 atendido, Rodríguez Alicea implícitamente consintió a ser despojado de sus artículos personales para ser atendido, conforme a los procedimientos médicos correspondientes (en su caso tuvo que ser intervenido quirúrgicamente). Exposición Narrativa de la Prueba, a la pág. 13.
Siendo sospechoso del crimen por el cual fue posteriormente acusado, Exposición Narrativa de la Prueba, a la pág. 9, el Agente Batalla tenía razones para pensar en el alto riesgo de que la evidencia que le fue ocupada en el hospital, Exposición Narrativa de la Prueba, a la pág. 10, pudiera ser destruida u ocupada por cualquier familiar y/o amigo y, posteriormente, destruida. Alegato del Procurador General, a la pág. 17. Actuó acertadamente el Agente Batalla al ocupar, de forma preventiva, los zapatos deportivos, pantalones mahones y la camisa de Rodríguez Alicea, a fin de que la misma no fuera erróneamente descartada, pues, a su entender, existían circunstancias extraordinarias que le requirieron actuar conforme lo hizo, y porque, de hecho, Rodríguez Alicea no podía alegar una expectativa legítima de intimidad en el centro hospitalario. El error alegado no fue cometido.
Por último, al evaluar si se probó la culpabilidad del acusado más allá de duda razonable, por imperativo constitucional, el tribunal apelativo concede gran deferencia al juzgador de instancia. El Pueblo de Puerto Rico v. Calderón Alvarez, supra. Por ende, en ausencia de pasión, prejuicio o error manifiesto, el foro apelativo no intervendrá con la apreciación de la prueba del tribunal. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).
En mérito a los fundamentos antes expuestos, procede confirmar la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2002 DTA 4
1. Fidel Cruz Carrasquillo fue acreedor de un procedimiento judicial conforme establecen las garantías constitucionales para todo acusado. Sin embargo, según informáramos mediante nuestra "Sentencia Parcial" de 29 de febrero de 2001, en vista del deceso del confinado, procedimos a anular y archivar la acusación (desde su origen), presentadas en su contra, así como también dimos por concluido el trámite apelativo solicitado por éste.